THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KEITH YAEGER, MICHAEL SCHULER, JOSEPH MONTGOMERY, BRYAN BAIR, THOMAS VANLAARHOVEN, LAURA HEGLE, KIM MARIE PAPA, ROBERT TEDESCO, and NATALIE TUZOVSKAYA, individually and on behalf of all others similarly situated, | Consolidated Action Nos. 1:14-cv-4490-JBS-KMW and 1:14-cv-6317-JBS-KMW **CLASS ACTION** |
| Plaintiffs, | |
| v. | **DOCUMENT ELECTRONICALLY FILED** |
| SUBARU OF AMERICA, INC., a New Jersey Corporation, and FUJI HEAVY INDUSTRIES, LTD., a Japanese Corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

BRIEF OF DEFENDANT SUBARU OF AMERICA, INC.
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
MASTER CONSOLIDATED COMPLAINT

BALLARD SPAHR LLP
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002
Tel. 856-761-3400
Fax 856-761-1020

*Counsel for defendant
  Subaru of America, Inc.*

*Of Counsel and on the Brief:*
Neal D. Walters
Michael R. Carroll
Michele C. Ventura
Casey G. Watkins

**TABLE OF CONTENTS**

I.    INTRODUCTION.............................................1

II.   FACTUAL BACKGROUND.......................................2

III.  ARGUMENT................................................5

      A.   Legal Standard.....................................5

      B.   Plaintiffs' request for injunctive relief is
           preempted by federal law..........................6

      C.   Plaintiffs fail to state a claim for breach of
           the emissions warranty...........................10

      D.   The New Jersey causes of action must be dismissed
           as to the non-New Jersey plaintiffs..............13

           1.   Existence of Conflicts.......................16

           2.   Most Significant Relationship................23

      E.   Plaintiffs fail to state a claim for violation of
           the California Secret Warranty Act because the
           statute does not apply to alleged safety defects.....28

      F.   Plaintiffs fail to state a claim as to the two
           New York statutes because no alleged misconduct
           occurred in the State of New York................29

      G.   The implied warranty claims under California,
           Florida, and New York law must be dismissed for
           lack of privity and failure to state a claim........30

      H.   Plaintiff Hegle fails to state a claim for breach
           of express or implied warranty...................33

      I.   Count IV must be dismissed because plaintiffs
           fail to state a claim for breach of the implied
           covenant of good faith and fair dealing..........34

IV.   CONCLUSION.............................................40

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                    <u>Page(s)</u>

<u>FEDERAL CASES</u>

<u>Agostino v. Quest Diagnostics</u>,
    256 F.R.D. 437 (D.N.J. 2009) ...............................16

<u>Anunziato v. eMachines, Inc.</u>,
    402 F. Supp. 2d 1133 (C.D. Cal. 2008) ......................21

<u>Arlandson v. Hartz Mountain Corp.</u>,
    792 F. Supp. 2d 691 (D.N.J. 2011) ..........................14

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009) ......................................5, 6

<u>Beth Schiffer Fine Photographic Arts, Inc. v. Colex
    Imaging, Inc.</u>,
    No. 10-05321, 2012 WL 924380 (D.N.J. March 19, 2012) .......21

<u>Burger King Corp. v. Weaver</u>,
    169 F.3d 1310 (11th Cir. 1999) .............................36

<u>Bussian v. DaimlerChrysler Corp.</u>,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ....................9, 10

<u>by United Artists Theatre Circuit, Inc. v. Twp. of
    Warrington</u>,
    316 F.3d 392 (3d Cir. 2003) ................................38

<u>Clark v. Actavis Grp. HF</u>,
    567 F. Supp. 2d 711 (D.N.J. 2008) ..........................10

<u>Clemens v. DaimlerChrysler Corp.</u>,
    534 F.3d 1017 (9th Cir. 2008) ..............................30

<u>Cox House Moving, Inc. v. Ford Motor Co.</u>,
    No. 06-1218, 2006 WL 2303182 (D.S.C. Aug. 8, 2006) ..........7

<u>Cummings v. Allstate Ins. Co.</u>,
    832 F. Supp. 2d 469 (E.D. Pa. 2011) ........................39

<u>Dewey v. Volkswagen AG</u>,
    558 F. Supp. 2d 505 (D.N.J. 2008) ..........................13

<u>Diversified Prods., Inc. v. Tops Markets, Inc.</u>,
    No. 99-0457, 2001 WL 640697 (W.D.N.Y. June 7, 2001) ........38

Elias v. Ungar's Food Prods., Inc.,
   252 F.R.D. 233 (D.N.J. 2008) ...............................22

Geier v. Am. Honda Motor Co.,
   529 U.S. 861 (2000) ........................................8

Gross v. Stryker Corp.,
   858 F. Supp. 2d 466 (W.D. Pa. 2012) .......................23

Heindel v. Pfizer, Inc.,
   381 F. Supp. 2d 364 (D.N.J. 2004) .........................20

Hornberger v. Gen. Motors Corp.,
   929 F. Supp. 884 (E.D. Pa. 1996) ..........................32

In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.,
   153 F. Supp. 2d 935 (S.D. Ind. 2001) ..................7, 8, 9

In re Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir. 1997) ..............................11

In re Sony Gaming Network & Customer Data Sec. Breach
   Litig.,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................17

Kennedy v. Axa Equitable Life Ins., Co.,
   No. 06-6092, 2007 WL 2688881 (D.N.J. Sep. 11, 2007) .......18

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,
   171 F.3d 818 (3d Cir. 1999) ...............................22

Lilly v. Ford Motor Co.,
   No. 00-7372, 2002 WL 84603910 (N.D. Ill. Jan. 22, 2002) .....7

Maloney v. Microsoft Corp.,
   No. 09-2047, 2011 WL 5864064 (D.N.J. Nov. 21, 2011) .......14

Maniscalco v. Brother Int'l,
   709 F.3d 202 (3d Cir. 2013) ............14, 15, 24, 25, 26, 27

Montich v. Miele USA, Inc.,
   849 F. Supp. 2d 439 (D.N.J. 2012) .....................13, 17

Namovicz v. Cooper Tire & Rubber Co.,
   225 F. Supp. 2d 582 (D. Md. 2001) .........................8

Nelson v. Nissan N. Am., Inc.,
   894 F. Supp. 2d 558 (D.N.J. 2012) .........................32

Nikolin v. Samsung Elecs. Am., Inc.,
    No. 10-1456, 2010 WL 4116997 (D.N.J. Oct. 18, 2010) ........14

Parkway Garage, Inc. v. City of Phila.,
    5 F.3d 685 (3d Cir. 1993) ...................................38

Plastino v. Wells Fargo Bank,
    873 F. Supp. 2d 1179 (N.D. Cal. 2012) ......................35

Warma Witter Kreisler, Inc. v. Samsung Elecs Am., Inc.,
    No. 08-5380, 2010 WL 1424014 (D.N.J. Apr. 8, 2010) .........14

Werwinski v. Ford Motor Co.,
    286 F.3d 661 (3d Cir. 2002) ................................20

Westport Marina, Inc. v. Boulay,
    783 F. Supp. 2d 344 (E.D.N.Y. 2010) ........................23

**STATE CASES**

Alloway v. Gen. Marine Indus., L.P.,
    149 N.J. 620 (1997) ........................................22

Baker v. Lafayette College,
    504 A.2d 247 (Pa. Super. Ct. 1986) .........................39

Berkman v. Robert's Am. Gourmet Food, Inc.,
    841 N.Y.S.2d 825 (Sup. Ct. 2007) .......................18, 29

Bionghi v. Metropolitan Water Dist.,
    70 Cal. App. 4th 1358 (Ct. App. 1999) ..................35, 36

Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping
    Ctr. Assocs.,
    182 N.J. 210 (2005) ........................................37

Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,
    67 A.3d 961, 986 (Conn. 2013) ..........................36, 37

Cerasani v. Am. Honda Motor Co.,
    916 So. 2d 843 (Fla. Dist. Ct. App. 2005) ..............21, 30

Clark v. BMW of N. Am., LLC,
    No. B248593, 2014 WL 3907922 (Cal. Ct. App. Aug. 12,
    2014) ......................................................32

Cohen v. DIRECTV, Inc.,
    101 Cal. Rptr. 3d 37 (Ct. App. 2009) .......................17

Coker v. DaimlerChrysler Corp.,
    No. 01-1264, 2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004) ....8

Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust
    Co.,
    560 A.2d 151 (Pa. Super. Ct. 1989) ...........................39

Fink v. Ricoh Corp.,
    365 N.J. Super. 520 (Law Div. 2003) .........................15

Germantown Mfg. Co. v. Rawlinson,
    491 A.2d 138 (Pa. Super. Ct. 1985) ..........................39

Goshen v. Mut. Life Ins. Co. of N.Y.,
    774 N.E. 2d 1190 (N.Y. 2002) ............................18, 29

Gray v. Nationwide Mutual Ins. Co.,
    223 A.2d 8 (Pa. 1966) .......................................39

Guz v. Bechtel Nat'l, Inc.,
    8 P.3d 1089 (Cal. 2000) .....................................35

Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund
    v. Merck & Co., Inc.,
    192 N.J. 372 (2007) .........................................14

LSI Title Agency, Inc. v. Evaluation Servs., Inc.,
    951 A.2d 384 (Pa. Super. Ct. 2008) ..........................39

Luciano v. World-Wide Volkswagen Corp.,
    514 N.Y.S.2d 140 (App. Div. 1987) ...........................30

Mountz v. Global Vision Prods., Inc.,
    770 N.Y.S.2d 603 (Sup. Ct. 2003) ........................19, 29

Murrin v. Ford Motor Co.,
    756 N.Y.S.2d 596 (App. Div. 2003) .......................18, 29

Ridge Meadows Homeowners Ass'n v. Tara Dev. Co.,
    665 N.Y.S.2d 361 (App. Div. 1997) ...........................19

Spring Motors Distribs. v. Ford Motor Co.,
    98 N.J. 555 (1985) ......................................21, 22

Weinberg v. Sun Co.,
    777 A.2d 442 (Pa. 2001) .....................................20

**FEDERAL STATUTES**

49 U.S.C. § 30119 (2012)..........................................9

49 U.S.C. §§ 30101–30183 (2012)..................................7

15 U.S.C. §§ 2301–2312 (2012).................................4, 11

**OTHER STATUTES**

73 Pa. Cons. Stat. § 201-9.2 (2014)............................20

Cal. Bus. & Prof. Code § 17200 (West 2014).................4, 17

Cal. Civ. Code §§ 1750-1785 (West 2014)................4, 17, 18

Cal. Civ. Code §§ 1791.1, 1792 (West 2014).....................5

Cal. Civ. Code § 1795.90 (West 2014).......................5, 28

Conn. Gen. Stat. §§ 42-110a to -110q (2014)................5, 20

Fla. Stat. § 95.11(2)(b) (2014)...............................22

Fla. Stat. §§ 501.201-.213 (2014)..........................5, 19

N.Y. Gen. Bus. Law § 349...............................5, 18, 19

N.Y. Gen. Bus. Law § 350...............................5, 18, 19

N.J.S.A. § 2A:14-1....................................18, 19, 20

N.J.S.A. § 12A:2-725..........................................22

N.J.S.A. § 56:8-1 to -20...............4, 16, 17, 18, 19, 20, 21

**RULES**

Fed. R. Civ. P. 12(b)(6).......................................5

Fed. R. Civ. P. 8(a)...........................................5

**REGULATIONS**

Cal. Code Regs. Title 13, § 2037(c)(1)........................12

49 C.F.R. § 577.5..............................................9

49 C.F.R. § 577.7..............................................9

49 C.F.R. § 577.13...............................................9

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws.......................13

## I.   INTRODUCTION

Nine plaintiffs from six states filed this purported class action regarding the rate of oil consumption in their Subaru vehicles.  All motor vehicles consume oil.  However, plaintiffs here allege that their vehicles consume more oil than expected.  As a result, they seek to represent a class of all purchasers nationwide, asking for money damages and broad injunctive relief, including a nationwide recall of more than 650,000 vehicles.  Plaintiffs also seek to represent an additional and distinct class of consumers, from eleven states, claiming that oil consumption affects their vehicles' emissions, thereby triggering a separate emissions warranty.

Plaintiffs' Master Consolidated Complaint (the "Complaint") suffers from fundamental flaws.  In some instances, those flaws affect the claims of all plaintiffs, and in others, they affect state-specific claims alleged, in the alternative, on behalf of putative statewide subclasses.

Regarding claims made by all plaintiffs, the Complaint's broad request for injunctive relief -- including a request for a notice to consumers about an alleged safety risk -- is preempted by federal law.  The authority to mandate safety-related notices and recalls of motor vehicles resides exclusively with the National Highway Traffic Safety Administration ("NHTSA").  Second, plaintiffs fail to state a

claim for a breach of the separate emissions warranty, and all claims on behalf of that separate class must be dismissed.

Regarding the alternative state-specific claims, to the extent that non-New Jersey citizens assert claims under New Jersey law, those claims must be dismissed under well-settled choice-of-law rules.  Once the appropriate law is applied, several additional claims, pled in the alternative, must also be dismissed.

## II.  FACTUAL BACKGROUND

The Complaint includes nine plaintiffs.  Their names, residence, and the states in which they purchased and presented their vehicles for repair are as follows:

| Name | Residence | Purchase | Repair |
|------|-----------|----------|--------|
| Keith Yaeger | California (Compl. ¶ 10) | California (Compl. ¶ 11) | California (Compl. ¶ 14) |
| Michael Schuler | Florida (Compl. ¶ 20) | Florida (Compl. ¶ 21) | Florida (Compl. ¶ 24) |
| Joseph Montgomery | California (Compl. ¶ 28) | California (Compl. ¶ 29) | California (Compl. ¶ 34) |
| Bryan Bair | Pennsylvania (Compl. ¶ 40) | Pennsylvania (Compl. ¶ 41) | Pennsylvania (Compl. ¶ 43) |
| Thomas Vanlaarhoven | New Jersey (Compl. ¶ 46) | New Jersey (Compl. ¶ 47) | New Jersey (Compl. ¶ 48) |
| Lauren Hegle | California (Compl. ¶ 56) | California (Compl. ¶ 57) | California (Compl. ¶ 60) |
| Kim Marie Papa | New York (Compl. ¶ 69) | Connecticut (Compl. ¶ 70) | Connecticut and South Carolina (Compl. ¶¶ 73, 77) |
| Robert Tedesco, Jr. | Connecticut (Compl. ¶ 80) | Connecticut (Compl. ¶ 81) | Connecticut (Compl. ¶ 83) |
| Natalie Tuzovskaya | New Jersey (Compl. ¶ 87) | New Jersey (Compl. ¶ 88) | N/A |

- 2 -

Plaintiffs allege that their vehicles "have defective engines that burn a substantial portion of their engine oil, leading to increased emissions, decreased fuel efficiency, and potentially significant damage to the engine, catalytic converter, and other components." Compl. ¶ 1. Plaintiffs further allege that Subaru "discovered the defect years ago," and "secretly expand[ed] its warranty coverage" to deal with the issue. Id. ¶¶ 2, 4.

Plaintiffs claim that the alleged oil consumption defect poses a substantial risk to the lives of putative class members and others. Specifically, plaintiffs claim that when the engine oil level "falls too low, the vehicles can suffer abrupt and total failure of the engine[.]" Id. ¶ 120. As a result, they claim,

> [e]ven when Class Vehicles do not run out of engine oil, the defect can cause parts like the catalytic converters to fail, which -- like engine failure -- can cause the vehicles to suddenly buck, stall, and shut down when traveling at high speeds, risking the lives of drivers, their passengers, and others on the road.
>
> [Id.]

To support this allegation, plaintiff Hegle contends that she was "driving on the freeway in heavy traffic with a semi-truck behind her and a motor home driving alongside her when her vehicle bucked violently, lost power, and stalled." Compl. ¶ 64.

Based on these allegations, plaintiffs assert five causes of action on behalf of two putative nationwide classes:[1]

1. Violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 to -20 (Count I) (Nationwide Class);

2. Breach of Express Warranty (Count II) (Nationwide Class);

3. Breach of Implied Warranty of Merchantability (Count III) (Nationwide Class);

4. Breach of the Duty of Good Faith and Fair Dealing (Count IV) (Nationwide Class); and

5. Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (2012) (Count XIV) (Emissions Warranty Class).

Alternatively, the Complaint seeks to certify six statewide classes under California, Florida, New Jersey, New York, Pennsylvania, and Connecticut law.  In that event, it adds to the above causes of action the following state statutory claims:

6. Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (West 2014) (Count V) (California class);

7. Violation of the California Business and Professions Code, Cal. Bus. & Prof. Code § 17200 (West 2014) (Count VI) (California Class);

---

[1]    The Complaint defines two so-called "nationwide" classes. The first -- an actual nationwide class -- includes all consumers in the United States who purchased or leased a class vehicle.  The second -- a so-called "Emissions Warranty Class" -- includes all consumers from eleven specific states, who purchased or leased a class vehicle that required or will require a repair of the alleged defect during the applicable emissions warranty period.

8. Violation of the Florida Deceptive & Unfair Trade
Practices Act, Fla. Stat. §§ 501.201-.213 (2014) (Count
VII) (Florida Class);

9. Violation of New York General Business Law § 349, N.Y.
Gen. Bus. Law § 349 (McKinney 2014) (Count VIII) (New
York Class);

10. Violation of New York General Business Law § 350, N.Y.
Gen. Bus. Law § 350 (McKinney 2014) (Count IX) (New York
Class);

11. Violation of the Connecticut Unfair Trade Practices
Act, Conn. Gen. Stat. §§ 42-110a to -110q (2014) (Count
X) (Connecticut Class);

12. Violation of the Song-Beverly Consumer Warranty Act
for Breach of Express Warranties, Cal. Civ. Code
§§ 1791.2, 1793.2(d) (West 2014) (Count XI) (California
Class);

13. Violation of the Song-Beverly Act Consumer Warranty
Act for Breach of Implied Warranties, Cal. Civ. Code
§§ 1791.1, 1792 (West 2014) (Count XII) (California
Class); and

14. Violation of California's Secret Warranty Law, Cal.
Civ. Code § 1795.90 (West 2014) (Count XII) (California
Class).

**III. ARGUMENT**

    **A.   Legal Standard.**

      A complaint that fails "to state a claim upon which

relief can be granted" must be dismissed.  Fed. R. Civ. P.

12(b)(6).  Although a complaint need not contain "detailed

factual allegations," Rule 8(a) demands "more than an unadorned,

the-defendant-harmed-me accusation." Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007)).  "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (alteration in original) (internal citation omitted) (citing Twombly, 550 U.S. at 557).

A court is not bound to accept as true legal conclusions couched as factual allegations.  To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (internal quotation marks omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks omitted).

**B.   Plaintiffs' request for injunctive relief is preempted by federal law.**

In their prayer for relief, plaintiffs ask this Court to order a nationwide recall of more than 650,000 vehicles.  See Compl., p. 90.  At a minimum, plaintiffs ask the Court to require Subaru to issue a notice to consumers, making them aware of an alleged safety defect.  Id.  Those requests are beyond the power of state law and must be dismissed.

- 6 -

Despite that eight of the nine plaintiffs drove their vehicles without ever experiencing an engine failure, plaintiffs nonetheless allege that the oil consumption issue at the heart of the Complaint creates a substantial safety risk.[2] Specifically, plaintiffs claim that the alleged defect "risk[s] the lives of drivers, their passengers, and others on the road," Compl. ¶ 120, and that "many drivers do not discover the defect until after their lives have been jeopardized," id. ¶ 132.

Courts consistently have concluded that, in respect of recalls, state law authority is preempted by the comprehensiveness of the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101-30183 (2012). See Cox House Moving, Inc. v. Ford Motor Co., No. 06-1218, 2006 WL 2303182, at *8 (D.S.C. Aug. 8, 2006) ("Federal courts have held that conflict preemption applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action."); Lilly v. Ford Motor Co., No. 00-7372, 2002 WL 84603910, at *5 (N.D. Ill. Jan. 22, 2002) ("It is clear that Congress did not intend for the federal courts to have authority to order recalls of motor vehicles on a nationwide basis for several model years."); In re Bridgestone/Firestone Inc. Tires

---

[2]     Subaru contests the allegation that there is, or could be, any actual safety risk related to the oil consumption rate of the putative class vehicles.

Prods. Liab. Litig., 153 F. Supp. 2d 935, 944-45 (S.D. Ind.
2001) (concluding that state law requiring recall would
frustrate purpose of the Safety Act and is precluded by
principles of conflict preemption); Namovicz v. Cooper Tire &
Rubber Co., 225 F. Supp. 2d 582, 584 (D. Md. 2001) (observing
that the Safety Act "completely preempt[s] the area of vehicle
and equipment recalls" (footnote omitted)); Coker v.
DaimlerChrysler Corp., No. 01-1264, 2004 WL 32676, at *4 (N.C.
Super. Ct. Jan. 5, 2004) (holding federal law "clearly preempts"
recalls because recalls are "solely within the purview of NHTSA"
and a court-ordered recall "would frustrate the Congressional
intent evidenced in the Safety Act to preempt state law
regarding the recall of automobiles").

     Courts repeatedly have reached this conclusion under
the principles of conflict preemption.[3]  Conflict preemption
arises where state action would frustrate the purpose of a
federal scheme.  Bridgestone, 153 F. Supp. 2d at 943-44 (quoting
Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73
(2000)).  Moreover, it applies even if the preempting
legislation contains a savings clause.  See Geier v. Am. Honda

---

[3]    There is no presumption against preemption in this matter
because "states have never assumed a significant role in recalls
related to vehicle safety."  Bridgestone, 153 F. Supp. 2d at
943-44 (emphasis in original).

Motor Co., 529 U.S. 861, 869 (2000).  "[P]arallel, competing system[s] of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." Bridgestone, 153 F. Supp. 2d at 944.  The fundamental underpinning of the Safety Act was to implement a recall system that supported and supplemented the Federal Motor Vehicle Safety Standards created by NHTSA.[4]

The notice and recall plaintiffs seek are barred also by the doctrine of primary jurisdiction, a court-created doctrine that focuses on "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006) (citing Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 303 (1976)).  Although its elements defy exact definition, courts generally consider two

---

[4]   That scheme governs not only the recall itself, but any notices sent to consumers.  See, e.g., 49 U.S.C. § 30119 (2012) (mandating content, timing, and method of notification by manufacturers); Bridgestone, 153 F. Supp. 2d at 948 (discussing comprehensiveness of legislative scheme and stating "[t]he detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work"); 49 C.F.R. § 577.5 (regulating content and appearance of manufacturer's notice to customers in respect of safety recall); 49 C.F.R. § 577.7 (regulating time and manner of safety recall notifications); 49 C.F.R. § 577.13 (regulating safety-related defect notifications to dealers and distributors).

factors:  (1) whether the case "involves a matter within the special expertise of the agency; and (2) [whether] there is a need to promote uniformity in administrative policy or a possibility of inconsistent results between the courts and the agency."  Id.  Here, both factors strongly favor deferring to NHTSA's "special competence."  Id. at 629; see Clark v. Actavis Grp. HF, 567 F. Supp. 2d 711, 719 (D.N.J. 2008) (holding doctrine of primary jurisdiction applies in respect of federal agency's particularized knowledge and statutory authority to order recalls).

The authority to grant the relief requested by plaintiffs -- the issuance of a notice to consumers and the implementation of a recall -- lies not with this Court, but rather exclusively with NHTSA.[5]

### C.   Plaintiffs fail to state a claim for breach of the emissions warranty.

In addition to the nationwide class of consumers, plaintiffs seek to certify a separate "Emissions Warranty Class," consisting of consumers from eleven states who purchased or leased a class vehicle that required or will require a repair of the alleged defect during the coverage period of the applicable emissions warranty.  Compl. ¶ 163.  The sole claim

_____

[5]   Indeed, the California legislature recognized as much when it exempted safety-related and emissions campaigns from coverage under its secret warranty statute.  See, Section III(E), infra.

asserted on behalf of that separate class, Count XIV, alleges a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312 (2012). Specifically, plaintiffs allege that the "engine block, pistons and piston rings" are covered by the 7-year, 70,000-mile emissions warranty mandated by the relevant states, and that Subaru has breached that warranty by refusing to repair those parts pursuant to the emissions warranty. See Compl. ¶¶ 289-91. That claim fails for one simple reason: the piston rings are not covered by the emissions warranty, and plaintiffs are seeking improperly to extend the duration of their powertrain warranties.

The putative class vehicles are sold with several warranties, each covering specific vehicle parts. As plaintiffs acknowledge, the piston rings at issue here are covered by Subaru's 5-year, 60,000-mile powertrain warranty. See Compl. ¶ 138. Certain emissions-related parts are covered by the 7-year, 70,000-mile long-term emission control system defects warranty ("emissions warranty"). See Compl. ¶¶ 289-90; see also Subaru Warranty & Maintenance Booklet, attached hereto as Exhibit A, at 12.[6] In attempting to claim the applicability of the emissions

---

[6]    The Court may consider this document without converting this motion to one for summary judgment. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that document integral to or explicitly relied on in

(continued...)

warranty, the Complaint simply asserts that the piston rings "affect vehicle emissions," and qualify as "high-priced emissions-related parts" under the relevant states' laws. Compl. ¶ 290.  In doing so, the Complaint fundamentally misunderstands the emissions warranty and the law governing it.

A litigant cannot simply allege that a particular part is covered by the emissions warranty; that decision already has been made.  Under California law, motor vehicle manufacturers must identify each vehicle's high-priced warranted parts in their application for certification to the California Air Resources Board ("CARB").  Cal. Code Regs. Tit. 13, § 2037(c)(1).  That list is reviewed and approved by CARB, which can reject or modify it to ensure that all qualifying parts are included.  Id. §§ 2037(c)(5)-(6).  The manufacturer must then provide to purchasers of new vehicles a list of those high-priced warranted parts.  Id. § 2037(f).

Subaru discloses its list of high-priced warranted parts in its Warranty & Maintenance Booklet.  See Exhibit A at 12.  It is those specific parts, identified in that disclosure, that are covered by the emissions warranty.  See id.  A simple review of the list reveals that the pistons and piston rings are

---

(...continued)
complaint may be considered on motion to dismiss without converting motion into one for summary judgment).

- 12 -

not listed, and therefore are not covered by the emissions
warranty.  Instead, as plaintiffs acknowledge, those powertrain
parts are covered by the powertrain warranty.  <u>See</u> Compl. ¶ 138.

Because the Complaint does not allege the failure of
any part covered by the emissions warranty, it fails to state a
claim for violation of that warranty, and Count XIV -- and any
other claims alleged on behalf of the putative Emissions
Warranty Class -- should be dismissed.

**D.   The New Jersey causes of action must be dismissed as
to the non-New Jersey plaintiffs.**

All but two plaintiffs purchased and used their
vehicles in states other than New Jersey.  As a result, their
claims asserted under New Jersey law must be dismissed.  The
reason is simple:  New Jersey's well-settled choice-of-law rules
dictate that, under the facts alleged here, the laws of each
plaintiff's home state govern both the consumer fraud and
warranty claims.[7]

In 2008, New Jersey adopted the "most significant
relationship test" of the Restatement (Second) of Conflict of

---

[7]   It is well-settled that the Court may undertake this choice
of law analysis at the pleadings stage.  <u>See, e.g.</u>, <u>Montich v.
Miele USA, Inc.</u>, 849 F. Supp. 2d 439, 445 (D.N.J. 2012) (citing
<u>Cooper v. Samsung Elecs. Am., Inc.</u>, 374 Fed. Appx. 250, 255 (3d
Cir. 2010) (rejecting plaintiff's argument that it was premature
to make a choice-of-law determination at the motion to dismiss
stage)); <u>Dewey v. Volkswagen AG</u>, 558 F. Supp. 2d 505, 516
(D.N.J. 2008).

Laws.  See Maniscalco v. Brother Int'l, 709 F.3d 202, 206 (3d
Cir. 2013) (citing P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J.
132, 143 (2008)).  Since then, "the overwhelming majority of
courts" applying New Jersey choice-of-law rules in similar
product liability class actions have concluded that the law of
each plaintiff's home state governs each plaintiff's claims.
Id. at 209 (citing Montich, 849 F. Supp. 2d at 449 ("A majority
of courts in this District have held that the mere fact that a
company is headquartered in New Jersey or that unlawful conduct
emanated from New Jersey will not supersede the numerous
contacts with the consumer's home state.")); Arlandson v. Hartz
Mountain Corp., 792 F. Supp. 2d 691, 709 (D.N.J. 2011) (applying
consumer fraud statutes of plaintiffs' home states even where
alleged misrepresentations were made in New Jersey); Maloney v.
Microsoft Corp., No. 09-2047, 2011 WL 5864064, at *10 (D.N.J.
Nov. 21, 2011) (same); Nikolin v. Samsung Elecs. Am., Inc., No.
10-1456, 2010 WL 4116997, at *4 (D.N.J. Oct. 18, 2010) ("[M]ere
allegations that the unlawful conduct emanated from New Jersey
did not outweigh the substantial ties to plaintiffs' home
states. . . ."); Warma Witter Kreisler, Inc. v. Samsung Elecs
Am., Inc., No. 08-5380, 2010 WL 1424014, at *4 (D.N.J. Apr. 8,
2010) ("[A]llegation that [the defendant] designed the product's
operation in New Jersey does not outweigh the other, more
significant ties to [plaintiff's home state]."); Int'l Union of

- 14 -

Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 388 n.3 (2007) (noting that application of a single state's law to all members of nationwide class is "rare" and acknowledging "strong arguments" that each plaintiff's home state law should apply); Fink v. Ricoh Corp., 365 N.J. Super. 520, 598 (Law Div. 2003) (applying law of each plaintiff's state in large consumer fraud action).

There are obvious reasons for this result.  With the exception of plaintiff Papa, each plaintiff is a resident of his or her home state; received the allegedly fraudulent representations in that state; purchased and accepted delivery of the vehicle in that state; and suffered the alleged injury and damages in that state.  Given similar facts, courts "overwhelmingly" apply the law of each plaintiff's home state, to avoid "opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters."  Maniscalco, 709 F.3d at 210.  It is with that framework that Subaru now turns to the specific choice-of-law analysis in this case.

The Court first must examine each claim to determine whether a conflict exists.  If there is no conflict, the law of the forum governs.  However, if a conflict exists, the Court must apply the elements enumerated in the Restatement to

determine which state has the most significant relationship to the claim.

Two sections of the Restatement govern this analysis: a broad section applicable to all claims in the complaint (Restatement § 6), and more specific sections applicable to each cause of action.  The four New Jersey causes of action alleged by each plaintiff can be divided into two categories:  consumer fraud claims (Count I), governed by Restatement § 148, and contract claims (Counts II-IV), governed by Restatement § 188.[8]

As summarized in the chart in Section II, <u>supra</u>, all of the named plaintiffs other than Vanlaarhoven and Tuzovskaya purchased their vehicles, received alleged misrepresentations about their vehicles, and experienced their alleged injuries and damages in states other than New Jersey.  With the exception of plaintiff Papa, all of that activity occurred in each plaintiff's home state.

     **1.    Existence of Conflicts**

          1.   <u>Consumer Fraud Claims</u>

The Court first must determine whether a conflict exists.  As to the NJCFA claim (Count I), it is well settled that "significant conflicts exist between the NJCFA and the consumer protection statutes of other states."  <u>Agostino v.</u>

---

[8]   The claim under the MMWA is derivative of the underlying state law claims, and does not require separate analysis.

Quest Diagnostics, 256 F.R.D. 437, 461 (D.N.J. 2009) (citing Fink, 365 N.J. Super. at 584 (recognizing differences in damage, reliance and causation elements between NJCFA and law of other states)). Specifically, there are conflicts between the NJCFA and the consumer protection statutes of California, New York, Florida, Pennsylvania, and Connecticut.

(i)   California

California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus & Prof. Code § 17200, and Unfair Competition Law ("UCL"), Cal. Civ. Code § 1750 (West 2014), require plaintiffs to allege actual reliance on the allegedly unlawful conduct. See In re Sony Gaming Network & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (citing In re Tobacco II Cases, 207 P.3d 20, 25 (Cal. 2009) (holding that a plaintiff in a UCL action "must demonstrate actual reliance . . . in accordance with well-stated principles regarding the element of reliance in ordinary fraud cases")); Cohen v. DIRECTV, Inc., 101 Cal. Rptr. 3d 37 (Ct. App. 2009) (same for CLRA claims). By contrast, reliance is not an express element of a claim under the NJCFA. See Montich, 849 F. Supp. 2d at 446 ("Because the NJCFA does not require a showing of reliance, whereas California's consumer protection laws do, the Court finds there is a conflict of law between the two jurisdictions.").

Moreover, while the NJCFA provides for treble damages where plaintiffs demonstrate an ascertainable loss, see N.J.S.A. § 56:8-19, the CLRA expressly limits treble damages to cases involving public social services, see Cal. Civ. Code § 1783 (West 2014).  Finally, the statute of limitations for a claim under the CLRA is three years, see Cal. Civ. Code § 1783, while the NJCFA provides a substantially more generous six years, N.J.S.A. § 2A:14-1; Kennedy v. Axa Equitable Life Ins., Co., No. 06-6092, 2007 WL 2688881, at *2 (D.N.J. Sep. 11, 2007).

### (ii) New York

Conflicts also exist between the NJCFA and New York's consumer protection statute, N.Y. Gen. Bus. Law § 349. Specifically, "to qualify as a prohibited act under the [New York] statute, the deception of a consumer must occur in New York."  Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E. 2d 1190, 1195 (N.Y. 2002).  Indeed, "[b]oth General Business Law § 349 and § 350 have territorial limitations, and their application is strictly limited to transactions in New York State."  Berkman v. Robert's Am. Gourmet Food, Inc., 841 N.Y.S.2d 825 (Sup. Ct. 2007).

In other words, to have standing under the New York statute, the allegedly deceptive acts giving rise to the claim must have taken place in New York.  See Murrin v. Ford Motor Co., 756 N.Y.S.2d 596, 596 (App. Div. 2003) (dismissing claim

for failing to "allege that the deceptive acts complained of took place within the State of New York"); Mountz v. Global Vision Prods., Inc., 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003) (same).  The NJCFA contains no such territorial limitation, and, accordingly, a clear conflict exists.

Additionally, unlike the NJCFA, New York limits treble damages to $1,000, see § 349, and precludes absent class members from receiving minimum or treble damages.  Ridge Meadows Homeowners Ass'n v. Tara Dev. Co., 665 N.Y.S.2d 361, 361 (App. Div. 1997) ("[P]laintiffs are barred . . . from maintaining a class action for the minimum and treble damages imposed by . . . the General Business Law.").  Finally, New York imposes a three-year statute of limitations, see N.Y. C.P.L.R. 214(2) (Consol. 2014), while the NJCFA provides six years.

(iii)    Florida

There also are clear conflicts between the NJCFA and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–.213 (2014).  Specifically, the FDUTPA imposes a four-year statute of limitations, whereas the NJCFA grants six years.  Compare Fla. Stat. § 501.207(5), with N.J.S.A. § 2A:14-1.  Additionally, while the NJCFA provides for treble damages, see N.J.S.A. § 56:8-19, the Florida statute limits plaintiffs to "actual damages, plus attorney's fees and court costs."  Fla. Stat. § 501.211(2).

- 19 -

(iv) <u>Pennsylvania</u>

There are several conflicts between the NJCFA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL").  <u>See, e.g.</u>, <u>Heindel v. Pfizer, Inc.</u>, 381 F. Supp. 2d 364, 374 (D.N.J. 2004) (comparing the NJCFA and the PUTPCPL). Most significantly, a claim under the Pennsylvania statute would be barred in this case by the economic loss doctrine.  <u>See</u> <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 670 (3d Cir. 2002). Additionally, like the California statutes, the Pennsylvania statute requires plaintiffs to prove justifiable reliance.  <u>See</u> <u>Weinberg v. Sun Co.</u>, 777 A.2d 442, 446 (Pa. 2001) (holding that nothing in statute's legislative history suggests that "the legislature ever intended . . . to do away with the traditional common law elements of reliance and causation").

Moreover, unlike the NJCFA, treble damages and attorneys' fees are discretionary under the Pennsylvania statute.  <u>See</u> 73 Pa. Cons. Stat. § 201-9.2 (2014).

(v) Connecticut

Finally, conflicts exist between the NJCFA and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a to -110q.  Specifically, Connecticut imposes a three-year statute of limitations, whereas the NJCFA grants six years.  <u>Compare</u> <u>id.</u> § 42-110g(f), <u>with</u> N.J.S.A. § 2A:14-1.

- 20 -

Additionally, unlike the NJCFA, <u>see</u> N.J.S.A. § 56:8-19, the CUTPA does not provide for an award of treble damages.

### 2.   <u>Warranty and Contract Claims</u>

As with the consumer protection statutes, various conflicts also exist between New Jersey and of each plaintiff's home states regarding the contract claims (Counts II-IV).

### (i)   <u>Implied Warranty</u>

California, Florida, and New York require plaintiffs asserting implied warranty claims to be in vertical privity with the defendant.  <u>See</u> <u>Anunziato v. eMachines, Inc.</u>, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2008) ("In California a plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant" (internal quotation marks omitted)); <u>Cerasani v. Am. Honda Motor Co.</u>, 916 So. 2d 843, 847 (Fla. Dist. Ct. App. 2005) ("[P]ursuant to Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); <u>Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.</u>, No. 10-05321, 2012 WL 924380 at *10 (D.N.J. March 19, 2012) (recognizing conflict between New York and New Jersey because the former "retain[s] the traditional vertical privity requirement for economic loss under the implied warranty provisions of the UCC").  New Jersey does not impose that requirement.  <u>See</u> <u>Spring Motors Distribs. v. Ford Motor Co.</u>, 98 N.J. 555, 561 (1985)

(stating that "buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties").[9]

(ii) Express Warranty

Regarding the express warranty claims, Florida provides a five-year statute of limitations, whereas New Jersey provides only four years.  Compare Fla. Stat. § 95.11(2)(b), with N.J.S.A. § 12A:2-725.  Moreover, states define what constitutes the "basis of the bargain" for purposes of warranty obligations differently.  New Jersey law does not strictly require reliance on the warranty at the time of purchase.  See Elias v. Ungar's Food Prods., Inc., 252 F.R.D. 233, 239 (D.N.J. 2008) (quoting Bregman Screen & Lumber Co. v. Bechefsky, 16 N.J. Super. 35 (App. Div. 1951)) ("As a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of a kind which naturally would induce the purchase.").[10]

---

[9]   Although Spring Motors addressed commercial buyers, its holding was extended to consumer purchasers in Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620 (1997).

[10]   The Third Circuit has "recognize[d] that reliance may become a factor in determining whether or not an affirmation of fact or promise is part of the basis of the bargain[,]" but that is not currently the case.  Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, n.7 (3d Cir. 1999).

By contrast, New York and Pennsylvania expressly require reliance as an essential part of the express warranty claim.  See Westport Marina, Inc. v. Boulay, 783 F. Supp. 2d 344, 354 (E.D.N.Y. 2010) (holding "reliance is an essential element of Plaintiffs' express warranty claims"); Gross v. Stryker Corp., 858 F. Supp. 2d 466, 501-02 (W.D. Pa. 2012).

### 2.   Most Significant Relationship

Having determined that conflicts exist between the laws of New Jersey and plaintiffs' home states, the Court must determine which state has the most significant relationship to each claim.  That analysis involves an application of the elements of Restatement §§ 148 and 188, applicable to the consumer fraud and contract claims respectively, and the general elements of Restatement § 6, applicable to every claim.

### 1.   Consumer Fraud Claims -- Restatement § 148

Restatement § 148 governs the choice-of-law analysis applicable to consumer fraud claims (Count I).  The Court must weigh the following factors:  (1) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (2) the place where the plaintiff received the representation; (3) the place where the defendant made the representations; (4) the residence or place of incorporation and place of business of the parties; (5) the place where a tangible thing which is the subject of the transaction between the

parties was situated at the time; and (6) the place where a plaintiff is to render performance under a contract which he has been induced to enter by false representations of the defendant. Restatement § 148(2).

These factors overwhelmingly favor the law of each plaintiff's home state. Factors (1), (2), and (5) -- the place where plaintiffs acted in reliance, the place where plaintiffs received the alleged representations, and the place where the tangible thing was situated -- obviously favor plaintiffs' home states.[11] See, e.g., Maniscalco, 709 F.3d at 208. Factor (4) -- the residence of the parties -- favors each plaintiff's home state. Id. (citing Restatement § 148 cmt. i (noting that residence of plaintiff is more important than residence of defendant.)). Factor (6) is inapplicable, as there is no contract into which plaintiffs were induced.

Accordingly, only one of the six factors -- the place where the defendant made the representations -- could weigh in favor of New Jersey.[12] That single factor, however, cannot outweigh the inevitable conclusion mandated by the remaining

---

[11] Plaintiff Papa did not purchase her vehicle in her home state, but she is identical to the remaining plaintiffs in that none of the relevant activity occurred in New Jersey.

[12] Even as to that factor, however, plaintiffs allege that much of the decision-making is controlled not by employees in New Jersey, but rather those in Japan. See Compl. ¶ 81.

factors, and those of Restatement § 6, below.  Indeed, it is for this reason that the "overwhelming majority of courts" in similar cases have concluded that the law of plaintiff's home state must govern.  <u>Maniscalco</u>, 709 F.3d at 209.

### 2.   <u>Contract Claims -- Restatement § 188</u>

The remaining causes of action, sounding in contract, are governed by Restatement § 188.  That section considers the following factors:  (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  Moreover, if the place of negotiating and the place of performance are in the same state, the law of that state is presumed to apply.  <u>See</u> Restatement § 188(3).

With the exception of plaintiff Papa, each plaintiff negotiated the purchase of the vehicle in his or her home state, and presented the vehicle for repair in that same state.  Accordingly, the presumption in favor of that state's law applies.  Ms. Papa purchased her vehicle and presented it for repair in Connecticut, but the overarching considerations of Restatement § 6 dictate that New York law governs.  Regardless, New Jersey law cannot apply.

Even if the presumption provided by § 188(3) did not apply, four of the five factors favor the law of plaintiffs' home states, as that was the place of contracting, negotiation, performance, and the location of the vehicles.  The fifth and final factor is, at best, a draw.  In short, as with plaintiffs' consumer fraud claims, the law of each plaintiff's home state governs the contract claims.

### 3.    All Claims -- Restatement § 6

Restatement § 6, applicable to all claims, serves only to reinforce the conclusion that the law of each plaintiff's home state governs.  That section considers the following:  (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and (5) the interests of the relevant states.

As to the first factor -- interstate comity -- the Third Circuit has been clear:

> [T]he interests of interstate comity favor applying the law of the [plaintiff's] own state.  Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each [plaintiff's] state.  See Fink, 365 N.J. Super. at 584 (finding that the interests of interstate comity "clearly require application of the law of any potential claimant's state of residence because application of any other state's law would frustrate the domiciliary state's legislative policies").
>
> [Maniscalco, 709 F.3d at 209].

As to the second factor -- the interests of the parties -- the Third Circuit has been equally clear:  "Because the only contacts between the parties took place in [the plaintiff's home state], it is reasonable to assume that they expected that [that state's] law would apply."  Id. at 209-10.

The third factor -- the underlying field of law -- is a draw.  Specifically, consumer fraud law serves two purposes: compensating injured parties, which favors plaintiffs' home states, and deterring corporate misconduct, which favors New Jersey.  Id. at 210.  The same reasoning applies to contract claims under the Uniform Commercial Code ("UCC").

The fourth factor -- the interests of judicial administration -- might favor New Jersey, as the application of a single state's law might be simpler, but those interests "must yield to the interests of the other factors."  Id. (citing Fu v. Fu, 160 N.J. 108 (1999)).

Finally, the fifth factor -- the interests of the relevant states -- plainly favors plaintiffs' home states, as "the interest [of the home state] in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud."  Id.

In short, Restatement § 6 overwhelmingly favors each plaintiff's home state, reinforcing the application of the claim-specific elements of Restatement §§ 148 and 188.

**E.   Plaintiffs fail to state a claim for violation of the California Secret Warranty Act because the statute does not apply to alleged safety defects.**

Subaru has established that New Jersey law cannot apply to the non-New Jersey plaintiffs.   In the alternative, Plaintiffs have pleaded statewide classes, under California, Florida, New Jersey, New York, Pennsylvania, and Connecticut law.   Subaru turns now to the Complaint's failure to state those specific claims.

On behalf of the California class, Count XIII alleges a violation of California's secret warranty statute, Cal. Civ. Code § 1795.90.   Specifically, the Complaint alleges that Subaru implemented an "adjustment program" as defined by that statute, such that Subaru was required to notify consumers of the program within 90 days of implementing it.   See Compl. ¶ 278.   This claim must be dismissed for one simple reason:   the plain language of the statute expressly excludes both safety and emissions issues.

In its definition of "adjustment program," the statute expressly excludes "service provided under a safety or emission-related recall campaign."   Civ. § 1795.90(d).[13]   The legislative

---

[13]   Although Subaru contests that the alleged defect relates to emissions, plaintiffs have alleged otherwise, and cannot have it both ways.   Either the problem relates to emissions, and is beyond the control of this state statute, or it is not an emissions issue in the first instance.

history of the statute recognizes NHTSA's supremacy in this arena.  See California Bill Analysis, S.B. 486 Sen., May 4, 1993 (discussing NHTSA's regulation of safety-related defects, including notice requirements).[14]  Under the facts as alleged in the Complaint -- which advances numerous safety and emissions-related allegations -- any campaign to address the issue would be outside the coverage of the California secret warranty statute, and Count XIII of the Complaint must be dismissed.

   **F.    Plaintiffs fail to state a claim as to the two New York statutes because no alleged misconduct occurred in the State of New York.**

       To state a claim under New York's consumer protection statute and false advertising law, "the deception of a consumer must occur in New York."  Goshen, 774 N.E. 2d at 1195; see also Berkman, 841 N.Y.S.2d at 825.  In other words, to have standing under either statute, a plaintiff must allege that the deceptive acts giving rise to the claim took place inside the State of New York.  See Murrin, 756 N.Y.S.2d at 598; Mountz, 770 N.Y.S.2d at 603.

       Here, plaintiffs strive to convince the Court that the allegedly deceptive acts occurred in either New Jersey or Japan, not in New York.  See Compl. ¶¶ 94-97, 157-162.  Moreover, the

---

[14]   California's recognition of this well-settled conclusion provides further support for Subaru's preemption argument in Section III(B), supra.  That preemption argument provides an independent basis to dismiss this claim.

sole New York plaintiff did not purchase her vehicle in New York, but rather in Connecticut, and upon allegedly experiencing oil consumption issues, she presented her vehicle to Subaru dealerships in Connecticut and South Carolina, not in New York. Id. ¶¶ 70, 73-77.  In other words, the Complaint not only fails to allege that offending conduct occurred in New York, it affirmatively pleads that it did not.  Accordingly, the New York statutory claims should be dismissed with prejudice.

> **G. The implied warranty claims under California, Florida, and New York law must be dismissed for lack of privity and failure to state a claim.**

In California, Florida, and New York, a consumer cannot recover economic losses for a breach of implied warranty under the commercial code, unless that consumer stands in direct vertical privity with the defendant.  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of implied warranty claims where automobile purchasers lacked privity with manufacturer) (citing Anunziato, 402 F. Supp. 2d at 1141); Cerasani, 916 So. 2d at 847 ("[P]ursuant to Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); Luciano v. World-Wide Volkswagen Corp., 514 N.Y.S.2d 140, 142 (App. Div. 1987) (holding that lack of privity "is fatal to an action based in implied warranty when the damages are solely for economic loss.") (citing Arthur Jaffee Assoc. v.

Bilsco Auto Service, Inc., 453 N.Y.S.2d 501 (App. Div. 1982)
aff'd, 448 N.E.2d 792 (N.Y. 1983)).

The Complaint affirmatively pleads a lack of privity between plaintiffs and Subaru.  Specifically, the California, New York, and Florida plaintiffs all allege that they purchased the subject vehicles from dealerships, not from Subaru.  See Compl. ¶¶ 11 (Yaeger), 21 (Schuler), 29 (Montgomery), 57 (Hegle), 70 (Papa).  As a result, they indisputably lack privity with Subaru, and Count III must be dismissed as to those plaintiffs.

Count III should be dismissed as to all plaintiffs because it fails to state a claim for a breach of the implied warranty of merchantability.  Although plaintiffs make serious generic allegations about vehicle safety, eight of nine plaintiffs fail to allege that their vehicles were rendered inoperable or otherwise experienced meaningful problems with operation.  Instead, they simply allege that they have had to replenish their engine oil more often than expected.  Those allegations simply do not state a claim that those vehicles are unmerchantable.

Under the UCC, the implied warranty of merchantability requires that a product be reasonably fit for the general purpose for which it was sold, a standard that does not require the vehicle to satisfy buyers' expectations, but rather imposes

- 31 -

only "a minimum level of quality."  Nelson v. Nissan N. Am.,

Inc., 894 F. Supp. 2d 558, 566-67 (D.N.J. 2012)

("'Merchantability does not mean that the goods are exactly as

the buyer expected, but rather that the goods satisfy a minimum

level of quality.'") (quoting Sheris v. Nissan N. Am., Inc., No.

07-2516, 2008 WL 2354908, at *6 (D.N.J. June 2, 2008) ("[T]he

implied warranty of merchantability is breached only when a

defect 'renders the vehicle unfit for its ordinary purpose of

providing transportation for its owner.'")); Hornberger v. Gen.

Motors Corp., 929 F. Supp. 884, 888 (E.D. Pa. 1996) ("[W]here a

car can provide safe, reliable transportation, it is generally

considered merchantable."); Clark v. BMW of N. Am., LLC, No.

B248593, 2014 WL 3907922 (Cal. Ct. App. Aug. 12, 2014) ("Since

cars are designed to provide transportation . . . where a car

can provide safe, reliable transportation, it is generally

considered merchantable.").

    With the exception of plaintiff Hegle, plaintiffs here

simply allege that their vehicles consume more oil than

expected.  Indeed, in most instances, each plaintiff continued

to drive their vehicle without incident.  As a result, they

cannot state a merchantability claim.[15]

---

[15]    Plaintiffs' tenuous claim that their allegedly excessive
oil consumption "may" cause engine failure is insufficient to
satisfy their obligation to plead actual manifestation.

(continued...)

**H.   Plaintiff Hegle fails to state a claim for breach of express or implied warranty.**

Of the nine plaintiffs, it is only Ms. Hegle who alleges that her first Subaru vehicle, a 2011 Forester, failed to provide reliable transportation, claiming that it stalled on a freeway, somehow as a result of excessive oil consumption. Yet, Ms. Hegle's warranty claims -- express and implied -- fail for a different reason:  she does not allege that Subaru failed to repair her vehicle.  With respect to her first vehicle, Ms. Hegle alleges that it was towed to a Subaru dealership, but she conspicuously fails to allege that Subaru denied a repair at that point.  See Compl. ¶ 65.  Rather, she simply alleges that she traded it in for a newer Subaru, a 2014 Forester.  Id. ¶ 66. Similarly, with respect to that second vehicle, Ms. Hegle alleges that she experienced excess oil consumption, but, once again, she conspicuously fails to allege that Subaru refused warranty service.[16]  See Compl. ¶¶ 66-68.  Thus, Ms. Hegle has

_____

(...continued)

Moreover, this speculative allegation is undermined by plaintiffs' own admission that the low oil warning light illuminated in their vehicles, alerting them to any potential issue.  See, e.g., Compl. ¶¶ 15, 16, 22, 25, 31, 35, 36, 37, 42, 43, 66, 73, 74, 75, 77, 78.

[16]   This is not simply careless pleading.  Plaintiff does not make these allegations because she cannot.  Specifically, plaintiff will not dispute that Subaru repaired both of Ms. Hegle's vehicles pursuant to her warranty, and, in fact, Ms. Hegle recently purchased yet a third Subaru.  Although these

(continued...)

- 33 -

failed to plead a necessary element of her claims, namely, that Subaru failed to honor its warranty.  As a result, she has not stated a claim for breach of any warranty, express or implied.

**I.   Count IV must be dismissed because plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing.**

In Count IV, plaintiffs attempt to allege a violation of the implied covenant of good faith and fair dealing.  They do so in two steps.  First, attempting to divorce the implied covenant from any actual contract, they allege that "the implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms."  Compl. ¶ 200.  That allegation misstates the law.  Second, plaintiffs allege that Subaru violated its "independent duty" in two ways:  (1) failing to notify plaintiffs of an alleged defect, and (2) failing to repair the alleged defect.  <u>See</u> Compl. ¶ 201.  Those allegations fail to state a claim for breach of the implied covenant, and Count IV must be dismissed.

**1.   California**

In California, the implied covenant "cannot impose substantive duties . . . beyond those incorporated in the

---

(...continued)

facts are beyond the pleadings, they explain why Ms. Hegle fails to plead a necessary element of her claims.

specific terms of [the] agreement." <u>Plastino v. Wells Fargo
Bank</u>, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (internal
editing marks omitted) (quoting <u>Perez v. Wells Fargo Bank, N.A.</u>,
No. 11-02279, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29,
2011)).  Indeed, to state a claim for a breach of the implied
covenant, "a plaintiff must identify the specific contractual
provision that was frustrated." <u>Id.</u>  Simply stated, the
covenant does not exist "independent[ly] of its contractual
underpinnings." <u>Guz v. Bechtel Nat'l, Inc.</u>, 8 P.3d 1089, 1110
(Cal. 2000).

     Moreover, although the implied covenant rests on
express terms, California law requires dismissal of the claim it
if it "relies on the same acts[] and seeks the same damages[]
as" a breach of contract claim. <u>Bionghi v. Metropolitan Water
Dist.</u>, 70 Cal. App. 4th 1358, 1370 (Ct. App. 1999).

     Regarding the claim that Subaru failed to provide
plaintiffs with notice of the alleged defect, plaintiffs
identify no provision of any contract requiring Subaru to
provide such a notice.  Because the implied covenant "cannot
impose substantive duties . . . beyond those incorporated in the
specific terms of [the] agreement," <u>see</u> <u>Plastino</u>, 873 F. Supp.
2d at 1191, that allegation fails to state a claim.

     Plaintiffs' second broad allegation in support of
Count IV -- that Subaru failed to fix the allege defect --

merely restates the basic warranty obligation underlying the express warranty claim in Count II.  In other words, it "relies on the same acts[] and seeks the same damages[] as" the express warranty claim, and, as a result, fails as a matter of California law.  Bionghi, 70 Cal. App. 4th at 1370.

### 2.  Florida

Plaintiffs' allegation that the implied covenant of good faith and fair dealing is an independent duty, and may be breached even absent a breach of contract, is directly contrary to Florida law.  Specifically, under Florida law, "no independent cause of action exists . . . for breach of the implied covenant of good faith and fair dealing." Burger King Corp. v. Weaver, 169 F.3d 1310, 1317 (11th Cir. 1999). Accordingly, as plaintiffs have attempted to assert the implied covenant as an independent duty, and an independent claim, Count IV fails as a matter of Florida law as well.

### 3.  Connecticut

Connecticut law, where good faith and fair dealing is discussed almost exclusively in the insurance context, requires more than a mere breach of contract.  Rather, to violate the implied covenant, the alleged conduct "must have been taken in bad faith . . . not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 67 A.3d 961, 986

(Conn. 2013) (quoting De La Concha of Hartford, Inc. v. Aetna
Life Ins. Co., 849 A.2d 382, 388 (Conn. 2004)).  Simply stated,
"[b]ad faith means more than mere negligence; it involves a
dishonest purpose."  Ibid.

     Plaintiff Tedesco fails to plead any actual facts to
satisfy this standard, and Count IV must be dismissed as to him.

### 4.  New Jersey

     Like Connecticut, New Jersey law also requires
plaintiffs to plead more than simply the failure to honor a
contractual obligation; rather, "[p]roof of bad motive or
intention is vital to an action for breach of the covenant."
Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr.
Assocs., 182 N.J. 210, 224 (2005).  The New Jersey Supreme Court
articulated the reasoning behind this standard as follows:

> If courts construe the covenant too broadly,
> it "could become an all-embracing statement
> of the parties' obligations under contract
> law, imposing unintended obligations upon
> parties and destroying the mutual benefits
> created by legally binding agreements."
> Northview Motors, Inc. v. Chrysler Motors
> Corp., 227 F.3d 78, 92 (3d Cir. 2000).  We
> have warned that "an allegation of bad faith
> or unfair dealing should not be permitted to
> be advanced in the abstract and absent an
> improper motive." Wade v. Kessler
> Institute, 172 N.J. 327, 341 (2002).
>
> [Brunswick Hills, 182 N.J. at 231.]

The Complaint fails to satisfy this standard, and Count IV should be dismissed as to plaintiffs Vanlaarhoven and Tuzovskaya.

### 5.   New York

In New York, if the conduct underlying the implied covenant claim is the same conduct underlying a breach of contract claim, the good faith claim should be dismissed as duplicative.  Diversified Prods., Inc. v. Tops Markets, Inc., No. 99-0457, 2001 WL 640697, at *3 (W.D.N.Y. June 7, 2001) (citing Apfel v. Prudential-Bache Sec., Inc., 183 A.D.2d 439 (N.Y. App. Div. 1992); Cary Oil v. Mg Refining & Marketing, Inc., 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000)).

Plaintiff Papa has alleged no facts that support her implied covenant claim other than those underlying her basic express warranty claim, and, as a result, Count IV must be dismissed as to plaintiff Papa.

### 6.   Pennsylvania

Plaintiff Bair's implied covenant claim must be dismissed for the simple reason that it is not recognized by Pennsylvania under the facts of this case.  Pennsylvania has recognized a duty of good faith and fair dealing only in limited situations.  See Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 701 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d

392 (3d Cir. 2003).  Specifically, the duty applies in dealings between franchisors and franchisees, between insurers and insureds, and potentially in the employment context.  See Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989) (citing Atl. Richfield Co. v. Razumic, 390 A.2d 736 (Pa. 1978)) (franchise context); Gray v. Nationwide Mutual Ins. Co., 223 A.2d 8 (Pa. 1966) (insurance context); Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138 (Pa. Super. Ct. 1985) (employment context); Baker v. Lafayette College, 504 A.2d 247 (Pa. Super. Ct. 1986) (employment context).

Moreover, there is no independent cause of action for an alleged breach of the implied covenant.  Rather, such a claim -- when available -- is "subsumed within a breach of contract claim."  Cummings v. Allstate Ins. Co., 832 F. Supp. 2d 469, 472 (E.D. Pa. 2011) (citation omitted); see also LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing.").  The reasoning is sound:  courts apply "'good faith requirements in aid and furtherance of the parties' agreement, not to override the parties' agreement for reasons of fairness, policy, or morality.'"  Id. (quoting

- 39 -

<u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 617

(3d Cir. 1995)).

   Accordingly, Count IV must be dismissed as to

plaintiff Bair.

**IV. CONCLUSION**

   For the above-stated reasons the following claims must

be dismissed for failure to state a claim:

    1. All claims for injunctive relief;

    2. All claims on behalf of the putative Emissions
      Warranty Class;

    3. Counts I, II, III, and IV, to the extent alleged
      under New Jersey law, as to plaintiffs Yaeger,
      Schuler, Montgomery, Bair, Hegle, Papa and
      Tedesco;

    4. Count II, alleging a breach of express warranty,
      as to plaintiff Hegle;

    5. Count III, alleging a breach of the implied
      warranty of merchantability, as to all
      plaintiffs;

    6. Count IV, alleging a violation of the implied
      covenant of good faith and fair dealing, as to
      all plaintiffs;

    7. Counts VIII and IX, alleging violations of New
      York General Business Law §§ 349 and 350, as to
      plaintiff Papa;

    8. Count XIII, alleging a violation of California's
      Secret Warranty Law, as to plaintiffs Yaeger,
      Montgomery and Hegle; and

    9. Count XIV, alleging a violation of the Magnuson-
      Moss Warranty Act based on an alleged breach of
      the emissions warranty, as to all plaintiffs.

Respectfully submitted,


s/ *Michael R. Carroll*
_____
Neal D. Walters
Michael R. Carroll
Michele C. Ventura
Casey G. Watkins
**B**ALLARD **S**PAHR **LLP**
**A** **P**ENNSYLVANIA **L**IMITED **L**IABILITY **P**ARTNERSHIP
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002
Tel. (856) 761-3400
Fax  (856) 761-1020

*Counsel for defendant*
  *Subaru of America, Inc.*

**DATED:**    December 5, 2014