**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| _____ : | |
| KEITH YAEGER, MICHAEL SCHULER, : | Consolidated Action Nos. |
| JOSEPH MONTGOMERY, BRYAN BAIR, : | 1:14-cv-4490-JBS-KMW and |
| THOMAS VANLAARHOVEN, LAURA HEGLE, : | 1:14-cv-6317-JBS-KMW |
| KIM MARIE PAPA, ROBERT TEDESCO, : | |
| and NATALIE TUZOVSKAYA, : | |
| individually and on behalf of all : | |
| others similarly situated, : | **CLASS ACTION** |
| : | |
| Plaintiffs, : | |
| : | **DOCUMENT ELECTRONICALLY** |
| v. : | **FILED** |
| : | |
| SUBARU OF AMERICA, INC., a : | |
| New Jersey Corporation, and : | **ORAL ARGUMENT REQUESTED** |
| FUJI HEAVY INDUSTRIES, LTD., : | |
| a Japanese Corporation, : | |
| : | |
| Defendants. : | |
| _____ : | |

**REPLY OF DEFENDANT SUBARU OF AMERICA, INC.
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
MASTER CONSOLIDATED COMPLAINT**

BALLARD SPAHR LLP
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002
Tel. 856-761-3400
Fax 856-761-1020

*Counsel for defendant
Subaru of America, Inc.*

*Of Counsel and on the Brief:*
Neal D. Walters
Michael R. Carroll
Michele C. Ventura
Casey G. Watkins

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................iii

I.    INTRODUCTION...................................................1

II.   ARGUMENT.......................................................2

      A.    Plaintiffs misunderstand their emissions
            warranty................................................2

      B.    Plaintiffs' request for a nationwide motor
            vehicle recall, and the related notice, is
            preempted...............................................6

      C.    The New Jersey causes of action must be dismissed
            as to the non-New Jersey plaintiffs.....................9

      D.    Plaintiffs fail to state a claim for violation of
            the California Secret Warranty Act.....................12

      E.    Each plaintiff's implied warranty claim must be
            dismissed for failure to state a claim.................13

      F.    Plaintiff Hegle fails to state a claim for breach
            of express or implied warranty.........................16

      G.    Plaintiffs fail to state a claim for breach of
            the implied covenant of good faith and fair
            dealing................................................17

III.  CONCLUSION....................................................19

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

Bruesewitz v. Wyeth Inc.,
  561 F.3d 233 (3d Cir. 2009) ..................................8

Cary Oil v. Mg Refining & Marketing, Inc.,
  90 F. Supp. 2d 401 (S.D.N.Y. 2000) .........................18

Clemens v. DaimlerChrysler Corp.,
  534 F.3d 1017 (9th Cir. 2008) ..............................15

Coyle v. Hornell Brewing Co.,
  No. 08-02797, 2010 WL 2539386 (D.N.J. June 15, 2010)
  (Simandle, J.) .............................................9

Ehrlich v. BMW of North America, LLC,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) .......................13

Geier v. Am. Honda Motor Co.,
  529 U.S. 861 (2000) ......................................7, 8

Haag v. Hyundai Motor Am.,
  969 F. Supp. 2d 313 (W.D.N.Y. 2013) ...................14, 16

Henderson v. Volvo Cars of North America, LLC,
  No. 09-4146, 2010 WL 2925913 (D.N.J. July 21, 2010) ........14

Holk v. Snapple Beverage Corp.,
  575 F.3d 329 (3d Cir. 2009) .................................8

Hornberger v. Gen. Motors Corp.,
  929 F. Supp. 884 (E.D. Pa. 1996) ...........................14

In re MyFord Touch Consumer Litig.,
  No. 13-3072, 2014 WL 2451291 (N.D. Cal. May 30, 2014) .......15

In re Toyota Motor Corp. Unintended Acceleration Mktg.,
  Sales Practices, & Prods. Liab. Litig.,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................15

Long v. Graco Children's Prods. Inc.,
  No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26,
  2013) ......................................................15

<u>Maniscalco v. Brother Int'l</u>,
   709 F.3d 202 (3d Cir. 2013) ...............................9, 11

<u>Marchante v. Sony Corp. of Am.</u>,
   801 F.Supp. 2d 1013 (S.D. Cal. 2011) .......................16

<u>Marsikian v. Mercedes Benz USA, LLC</u>,
   No. 08-04876, 2009 WL 8379784 (C.D. Cal. May 4, 2009) .......13

<u>Montich v. Miele USA, Inc.</u>,
   849 F. Supp. 2d 439 (D.N.J. 2012) ..........................12

<u>Nelson v. Nissan N. Am., Inc.</u>,
   894 F. Supp. 2d 558 (D.N.J. 2012) ..........................14

<u>Noel v. United Aircraft Corp.</u>,
   342 F.2d 232 (3d Cir. 1964) .................................8

<u>Patel v. New York Life Ins. Co.</u>,
   No. 11-4895, 2012 WL 1883529 (S.D.N.Y. May 21, 2012) .......18

<u>Plastino v. Wells Fargo Bank</u>,
   873 F. Supp. 2d 1179 (N.D. Cal. 2012) ......................18

<u>Pokorny v. Ford Motor Co.</u>,
   902 F.2d 1116 (3d Cir. 1990) ................................8

<u>Sanchez-Knutson v. Ford Motor Co.</u>,
   No. 14-61344-CIV, 2014 WL 5139306 (S.D. Fla. Oct. 7,
   2014) ......................................................15

<u>Simonson v. Hertz Corp.</u>,
   No. 1:10-CV-1585, 2011 WL 1205584 (D.N.J. Mar. 28, 2011) ....12

<u>Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.</u>,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .......................15

<u>Velasco v. Chrysler Group LLC</u>,
   No. 13-08080, 2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) ......5

<u>State Cases</u>

<u>Clark v. BMW of N. Am., LLC</u>,
   No. B248593, 2014 WL 3907922 (Cal. Ct. App. Aug. 12,
   2014) ......................................................14

<u>Guz v. Bechtel Nat'l Inc.</u>,
   24 Cal. 4th 317 (2000) .....................................17

**STATUTES**

49 U.S.C.A. § 30118..............................................7

49 U.S.C.A. §§ 30119-30120......................................8

**REGULATIONS**

Cal. Code Regs. Title 13, §§ 2035-2046......................3, 4

**OTHER AUTHORITIES**

Erwin Chemerinsky, Empowering States When It Matters: A
    Different Approach To Preemption, 69:4 Brook. L. Rev.
    1313 .......................................................8

## I.    INTRODUCTION

In opposing Subaru's motion to dismiss, plaintiffs make several critical errors of law and fact that expose the core shortcomings in their case.

**First**, plaintiffs fundamentally misunderstand their emissions warranty and the regulations governing it.  Misstating the scope of that warranty, plaintiffs seek judicial notice of a list of emissions parts that the law abandoned years ago.

**Second,** regardless of whether plaintiffs seek a recall, or merely "recall-like" relief, their preemption argument relies on inapplicable or outdated case law.

**Third**, plaintiffs seek to delay a choice-of-law analysis, claiming that discovery could make a difference.  But the case law overwhelmingly holds that the out-of-state plaintiffs here -- whose conduct as to their vehicles occurred exclusively outside of New Jersey -- may not bring claims under New Jersey law.  Discovery cannot change that conclusion.

**Fourth**, the warranty claims of plaintiff Hegle, who wrongly contends that she may claim a breach of warranty despite that Subaru repaired her vehicle, must be dismissed.

**Fifth**, as to the implied warranty of merchantability, plaintiffs argue that consuming oil faster than expected renders a motor vehicle unmerchantable.  That argument contradicts both the law and common sense, and that claim must be dismissed as to

all plaintiffs.[1]  Moreover, certain plaintiffs lack privity, and

fail to state a claim for that additional reason.

**Sixth**, and finally, plaintiffs misunderstand the law

of their home states, which they plead in the alternative.  That

law supports the dismissal of certain plaintiffs' claims

regarding good faith and fair dealing.

In short, plaintiffs' opposition is premised largely

upon a misunderstanding of law, and the Court should dismiss

those causes of action identified in Subaru's motion.[2]

**II.  ARGUMENT**

**A.  Plaintiffs misunderstand their emissions warranty.**

In addition to the putative nationwide class,

plaintiffs seek to certify a separate "Emissions Warranty

Class."  Compl. ¶ 163.  But plaintiffs' argument regarding the

emissions warranty rests upon a surprising misunderstanding of

---

[1]   Plaintiffs appear to have missed that this argument applies
to each of them.  Accordingly, their introduction incorrectly
states that Subaru has not moved to dismiss some of the implied
warranty claims.  To the contrary, Subaru moves to dismiss each
plaintiff's implied warranty claim for failure to state a claim.

[2]   Plaintiffs disingenuously claim that because Subaru's
motion to dismiss is not directed to the entire Complaint,
Subaru must concede some of its allegations.  See Pl. Br. at 1-
2.  To be clear, Subaru contests the entire Complaint, including
its attempt to cast a run-of-the-mill maintenance issue as a
life-threatening safety risk and its allegation that Subaru
secretly expanded its warranty.  But a motion to dismiss is not
a motion for summary judgment; Subaru's motion is limited to
those claims that can be dismissed easily on the pleadings.

how that warranty actually works.  Specifically, plaintiffs ask the Court to apply a regulatory scheme abandoned six years ago, using a list of parts abandoned thirty years ago.

As Subaru has explained, plaintiffs' vehicles were sold with several warranties.  The powertrain, which includes the piston rings at issue here, is covered by a 5-year, 60,000-mile warranty.  <u>See</u> Compl. ¶ 138.  A more specific and limited set of emissions-related parts is covered by a longer, legally-mandated emissions warranty.  <u>See</u> Def. Br. at 11.[3]  The parts covered by the emissions warranty are not subject to debate; they are established by law.  As plaintiffs correctly note, the emissions warranty laws of New Jersey and several other states are modeled after California's regulations, Cal. Code Regs. tit. 13, §§ 2035-2046.  Pl. Br. at 14.  But plaintiffs misunderstand how those regulations operate.

The emissions warranty covers only those parts "<u>described in the . . . manufacturer's application for certification</u>" to the California Air Resources Board ("CARB") (emphasis added).  § 2037(b)(2).  That application includes the list of "high-priced" warranted parts.  § 2037(c)(1)(B), (f)-(g).  The coverage of the emissions warranty is limited to those

---

[3]     In other words, plaintiffs are attempting to apply the longer emissions warranty to an engine part covered by the shorter, albeit significant, powertrain warranty.

parts on the list approved by CARB and provided to purchasers.
§ 2037(b)(2).

Plaintiffs attempt to undermine this regulatory scheme
by arguing that it "imposes no obligation on CARB to actually
review or sign off on the submitted lists." Pl. Br. at 16.
Setting aside that plaintiffs' argument is one of policy and not
law, it is wrong. The regulations state that the "Executive
Officer [of CARB] shall approve or disapprove" the list of parts
submitted by the manufacturer, and such approval "shall be a
condition of certification." § 2037(g). CARB has the authority
to "reject or require modification" of the list, including for
"incompleteness and lack of clarity." Id.

Plaintiffs' confusion appears to arise from their
reliance upon a prior regulatory scheme, abandoned in 2008, in
which CARB generated its own "Emissions Warranty Parts List."
See § 2037(c)(1)(A). The new and current scheme applies to all
"2008 and subsequent model year vehicles," and it no longer
relies upon the CARB-generated list. See § 2037(c)(1)(B).
Instead, current regulations rely upon the vehicle-specific
lists submitted by manufacturers and approved by CARB. Id.

Plaintiffs' reliance upon the original CARB-generated
list makes sense; it includes the piston rings at issue here.
But that list not only relates to a prior, inapplicable
regulatory scheme; it was amended in 1983, and again in 1985.

- 4 -

See CARB, Emissions Warranty Parts List (as amended June 29, 1983, and February 22, 1985), attached hereto as Exhibits A and B.  The updated versions no longer included the pistons.  Id. In other words, even if the CARB-generated list still governed, it would require dismissal of plaintiffs' emissions claims.

Finally, ignoring the regulatory scheme altogether, plaintiffs argue that the piston rings are covered by the warranty because they "affect vehicle emissions."  Compl. ¶ 290. That argument is irreconcilable with the regulatory scheme governing the warranty, which Subaru has outlined above. Regardless, that argument was found to be unpersuasive in the very case that plaintiffs cite to support it, Velasco v. Chrysler Group LLC, No. 13-08080, 2014 WL 4187796, at *13 (C.D. Cal. Aug. 22, 2014).  See Pl. Br. at 14-17.  As Velasco notes,

> under the logic of [the plaintiff's] argument, a multitude of motor vehicle components would be emissions-related parts because they indirectly affect emissions by affecting or controlling emissions related parts.
>
> [Id.][4]

---

[4]   Velasco cites the same CARB-generated list of parts submitted by plaintiffs, which may explain plaintiffs' reliance upon it.  But Velasco does not rely upon that list for any ruling, because it rejected plaintiffs' argument outright.  And, having rejected plaintiffs' argument, the court did not reach Chrysler's additional arguments, see id. at *13, which presumably included the argument that the CARB-generated list no longer governs.  Therefore, not only does Velasco not support plaintiffs' argument, it undermines it.

Citing a "lack of authority," and an "absence of any logical limiting principle," the court granted the defendant's motion to dismiss.  Id. at *13-14.

In short, under the law that actually governs plaintiffs' emissions warranty, the allegedly defective parts are not covered, and all claims on behalf of the putative Emissions Warranty Class should be dismissed.

**B.    Plaintiffs' request for a nationwide motor vehicle recall, and the related notice, is preempted.**

Subaru has advanced a preemption argument based on two facts that plaintiffs do not dispute: (1) the Complaint alleges a life-threatening safety defect; and (2) the Complaint asks this Court to order a nationwide recall of more than 650,000 vehicles.  See, e.g., Compl., ¶ 175, p. 90.  But a nationwide, safety-related vehicle recall is beyond the power of state law.

Plaintiffs confuse this issue by discussing injunctive relief other than a recall.  Nonetheless, they admit that they may "ultimately request injunctive relief that resembles aspects of a NHTSA recall," id. at 9, and refer to their request as one for "recall-like relief," id. at 12.  Plaintiffs' attempt at ambiguity is understandable in light of the ample case law supporting preemption of safety-related vehicle recalls.[5]

_____

[5]    Plaintiffs also seek a related "curative notice."  Compl. at Prayer for Relief ¶ E.  But the Safety Act exclusively

(continued...)

- 6 -

Plaintiffs start by seeking a presumption against preemption, based on the incredible assertion that motor vehicle safety is an area of traditional state regulation. See Pl. Br. at 10. To the contrary, motor vehicle safety is so firmly entrenched in federal regulation that it supports a presumption in favor of preemption. See Geier v. Am. Honda Motor Co., 529 U.S. 861 (2000).

In Geier, the Court concluded that "nothing in the language of the [Safety Act's] saving clause suggests an intent to save state-law tort actions that conflict with federal regulations." Id. at 861. Indeed, "the saving clause foresees -- it does not foreclose -- the possibility that a federal safety standard will pre-empt a state common-law tort action with which it conflicts." Id. at 870. The Court also confirmed the importance of uniformity to the federal scheme:

> [the Safety Act's] pre-emption of all state
> standards . . . suggests an intent to avoid
> the conflict, uncertainty, cost, and
> occasional risk to safety itself that too
> many different safety-standard cooks might
> otherwise create. See H. R. Rep. No. 1776,
> 89th Cong., 2d Sess., 17 (1966) ("Basically,
> this preemption subsection is intended to
> result in uniformity of standards so that the
> public as well as industry will be guided by
> one set of criteria rather than by a
> multiplicity of diverse standards"); S. Rep.

(...continued)
governs such notices. See, e.g., 49 U.S.C.A. § 30118 (West) ("Notification of defects and noncompliance").

- 7 -

No. 1301, 89th Cong., 2d Sess., 12 (1966).
**This policy by itself favors pre-emption of state tort suits**.

[Id. at 871 (emphasis added).]

Although safety is an important goal of the act, Congress' intent to ensure uniformity requires a presumption in favor of preemption.  See id.; Erwin Chemerinsky, Empowering States When It Matters: A Different Approach To Preemption, 69:4 Brook. L. Rev. 1313, 1319 (stating that Geier "put[] a presumption in favor of preemption.").

To avoid preemption, plaintiffs cite outdated cases, or those involving entirely separate regulatory schemes.  See Pokorny v. Ford Motor Co., 902 F.2d 1116 (3d Cir. 1990) (decided ten years before Geier); Holk v. Snapple Beverage Corp., 575 F.3d 329, 334 (3d Cir. 2009) (involving "regulation of food and beverage labeling and branding"); Bruesewitz v. Wyeth Inc., 561 F.3d 233 (3d Cir. 2009) (involving pharmaceuticals).  The only case cited in support of state regulation of motor vehicles is Noel v. United Aircraft Corp., 342 F.2d 232, 242 (3d Cir. 1964), a fifty-year-old case decided before passage of the federal Safety Act.  Plaintiffs fail to cite any case in which a court actually ordered a safety-related vehicle recall.[6]

---

[6]     Similarly, in discussing mandatory recalls, plaintiffs fail to inform the Court that even voluntary recalls must involve NHTSA.  See, e.g., 49 U.S.C.A. §§ 30119-30120 (governing notification, quarterly reports, and myriad other issues).

Finally, the doctrine of primary jurisdiction applies here, as it "serves to maintain uniformity and consistency, uphold the integrity of a regulatory scheme, and establish a 'workable relationship between the courts and administrative agencies.'"  Coyle v. Hornell Brewing Co., No. 08-02797, 2010 WL 2539386, at *3 (D.N.J. June 15, 2010) (Simandle, J.) (quoting MCI Telecomms. v. Teleconcepts, Inc., 71 F.3d 1086, 1105 (3d Cir. 1995)).  A district court cannot be expected to determine the appropriate scope and logistics of a nationwide motor vehicle recall based on claims alleged under state law.  See id. at n.1 ("The issue ... is not whether a judge would be incapable of applying specialized scientific or technical concepts to the question at hand, but whether the federal agency with expertise and some regulatory experience with this issue is more likely to address the task with competence and knowledge arising from its customary duties and experience.").

**C.   The New Jersey causes of action must be dismissed as to the non-New Jersey plaintiffs.**

Subaru's moving brief includes a full discussion of New Jersey's choice-of-law rules, which require dismissal of the New Jersey causes of action asserted by out-of-state plaintiffs.

The Third Circuit and the "overwhelming majority of courts" in this district agree with Subaru.  See Maniscalco v.

- 9 -

Brother Int'l, 709 F.3d 202, 206 (3d Cir. 2013).[7]  Presumably,
for that reason, plaintiffs have not attempted to rebut Subaru's
choice-of-law argument.  Instead, they seek to delay it,
suggesting that discovery is required as to the "various
factors" relevant to the analysis.  Pl. Br. at 19.  But
plaintiffs do not identify "various factors" on which they seek
discovery; they identify one.  And the Third Circuit has held
that factor insufficient to support the application of New
Jersey law to out-of-state plaintiffs under these facts.[8]

        Specifically, as to consumer fraud claims, New Jersey
considers six factors in determining which state has the most
significant relationship to a claim, and only one of those six
considers the location of defendant's conduct.  See Restatement
§ 148(2).[9]  Plaintiffs express no need for discovery on the

_____

[7]    Due to space limitations, Subaru has omitted an extended
citation on this issue.  Subaru refers the Court to its moving
brief, pages 14-15, for a longer list of cases, many of which
were decided on a motion to dismiss.

[8]    Plaintiffs advance the following "various factors" on which
they require discovery: "the state in which Subaru's decision-
makers (i) learned of the defect, (ii) decided to conceal it
from consumers, (iii) decided against honoring the obligations
imposed by the emissions warranty laws, and (iv) decided to keep
the warranty expansion for the defect a secret."  Pl. Br. at 19.
But those "various factors" are but one consideration under New
Jersey's choice-of-law rules.  See Def. Br. at 23.

[9]    None of the factors on which plaintiffs seek discovery are
relevant to the contract claims.  See Def. Br. at 25.

remaining factors, or on the general considerations of the
Restatement § 6.  The Complaint provides more than enough
information to conclude that all remaining factors either
strongly favor each plaintiffs' home state, or are neutral.[10]

     As to the single factor on which plaintiffs seek
discovery, even where actionable conduct emanates from New
Jersey, that alone is insufficient to "open[] the floodgates to
nationwide consumer fraud class actions brought by out-of state
plaintiffs."  See Maniscalco, 709 F.3d at 210.  Specifically:

> Accepting [plaintiff's] premise that there
> were actionable omissions by [defendant] at
> its headquarters in New Jersey, we conclude
> that this single contact -- factor (c) --
> does not warrant applying New Jersey law.
> Nothing else about the relationship between
> the parties, other than the fortuitous
> location of [defendant's] headquarters, took
> place in the state of New Jersey.
>
> ...
>
> In so concluding, **we adopt the overwhelming
> majority of courts' application of New
> Jersey choice-of-law rules under similar
> circumstances.**
>
> [Id. at 208-09 (citing Montich v. Miele USA,
> Inc., 849 F. Supp. 2d 439, 449 (D.N.J.
> 2012)).]

---

[10]     Plaintiffs also claim a need for discovery to establish
"additional contacts within New Jersey."  Pl. Br. at 21.  But
the only contacts that could change the outcome -- plaintiffs'
own contacts with New Jersey -- are known to plaintiffs and have
not been alleged.

Accordingly, even if discovery were to show that Subaru engaged in actionable conduct in New Jersey, that alone cannot overcome the overwhelming factors favoring each plaintiff's home state.[11]

### D. Plaintiffs fail to state a claim for violation of the California Secret Warranty Act.

Plaintiffs attempt to have it both ways.  On the one hand, they claim that the alleged defect in their vehicles constitutes a safety hazard and increases emissions (see Pl. Br. at 1, 4).  On the other hand, they seek to enforce California's Secret Warranty statute, which expressly excludes such cases.

Plaintiffs admit that safety- and emissions-related campaigns "must be overseen" by NHTSA and the EPA respectively. Pl. Br. at 21.  Although one may plead legal theories in the alternative, one may not plead alternative facts.  See Simonson v. Hertz Corp., No. 1:10-CV-1585, 2011 WL 1205584, at *6 (D.N.J. Mar. 28, 2011) ("[A] plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts" (citing Fed. R. Civ. P. 8(d)(2)-(3)) (emphasis added)).

---

[11]   Contrary to the two unpublished cases that plaintiffs cite in support of deferring a choice-of-law analysis, see Pl. Br. at 19, it is well-settled that the Court may undertake that analysis now.  See, e.g., Montich, 849 F. Supp. 2d at 445 (citing Cooper v. Samsung Elecs. Am., Inc., 374 Fed. Appx. 250, 255 (3d Cir. 2010) ("We reject [plaintiff's] argument that the District Court erred in resolving the choice-of-law determination ... at the motion to dismiss stage, rather than wait until class certification.")).  There is no basis for deferring a ruling that could narrow this action and rein in costly discovery; plaintiffs have not advanced one.

Although disputed by Subaru, plaintiffs allege both safety and emissions concerns.[12]  Because a safety-related remedy falls under NHTSA's purview, and emissions-related remedies are EPA's domain, plaintiffs cannot avail themselves of the Secret Warranty law.

The case law upon which plaintiffs rest their opposition, see Pl. Br. at 21-22, does not speak to Subaru's argument.  In Ehrlich v. BMW of North America, LLC, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010), defendant argued that its campaign was excluded from the statute's definition of "adjustment program."  In Marsikian v. Mercedes Benz USA, LLC, No. 08-04876, 2009 WL 8379784, at *7 (C.D. Cal. May 4, 2009), defendant merely argued that plaintiff had not sufficiently pled a secret warranty claim.  In neither case did the defendant advance the argument that Subaru advances here.  Here, the facts alleged by plaintiffs preclude California Secret Warranty claim.

**E.    Each plaintiff's implied warranty claim must be dismissed for failure to state a claim.**

Each plaintiff's implied warranty claim fails because they have not alleged that their vehicles are unmerchantable. Plaintiffs' hyperbolic allegations aside, the "weight of

---

[12]    Plaintiffs allege that Subaru has "claim[ed] that its service bulletins are safety-related."  Pl. Br. at 23.  But Subaru makes no such claim; rather, Subaru unequivocally states that no safety issues are raised by plaintiffs' allegations. Plaintiffs' argument again rests upon a misunderstanding.

authority" holds that plaintiffs cannot state a merchantability claim for vehicles that are "fit for the ordinary purpose of providing basic transportation," and which "satisfy a minimum level of quality," even if they fail to perform "exactly as the buyer expected." Haag v. Hyundai Motor Am., 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013). See also Clark v. BMW of N. Am., LLC, No. B248593, 2014 WL 3907922 (Cal. Ct. App. Aug. 12, 2014); Nelson v. Nissan N. Am., Inc., 894 F. Supp. 2d 558, 566-67 (D.N.J. 2012); Hornberger v. Gen. Motors Corp., 929 F. Supp. 884, 888 (E.D. Pa. 1996).

Plaintiffs rely upon Henderson v. Volvo Cars of North America, LLC, No. 09-4146, 2010 WL 2925913 (D.N.J. July 21, 2010), but that case involved defects affecting drivability. Id. at *9 (alleging "slippage, hesitation, [and] harshness" in the vehicle's transmission). Except for Ms. Hegle, plaintiffs do not allege that their vehicles failed to provide reliable transportation substantially free of defects that impact vehicle operation. Even Ms. Hegle fails to make that allegation as to her current vehicle. Plaintiffs allege only that they had to refill their engine oil more often than expected. Those allegations simply do not give rise to a merchantability claim.

As to the merchantability claims alleged under California, Florida, and New York law, they also fail because plaintiffs lack privity. In the Ninth Circuit "a plaintiff

- 14 -

asserting breach of [implied] warranty claims must stand in vertical contractual privity with the defendant." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008). Plaintiffs claim that only "older cases" impose this requirement, Pl. Br. at 23, but courts continue to enforce it. See, e.g., Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc., 992 F. Supp. 2d 962, 980 n.15 (C.D. Cal. 2014) (denying implied warranty claim for lack of privity); Long v. Graco Children's Prods. Inc., No. 13-CV-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (same).

Plaintiffs argue for a third-party beneficiary exception to the privity rule. But that exception applies only where the third-party status is alleged in the complaint. See In re MyFord Touch Consumer Litig., No. 13-3072, 2014 WL 2451291, at *31 (N.D. Cal. May 30, 2014); In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010). Absent such an allegation, the implied warranty claim must be dismissed. See Tae Hee Lee, 992 F. Supp. 2d at 980 n.15; Long, 2013 WL 4655763, at *12. Florida courts are in agreement. See Sanchez-Knutson v. Ford Motor Co., No. 14-61344-CIV, 2014 WL 5139306, at *10 (S.D. Fla. Oct. 7, 2014).

Plaintiff Papa, whose claim is governed by New York law, argues that her lack of privity is subject to a "thing of

danger" exception.  Pl. Br. at 24.  New York courts are split on whether the "thing of danger" exception is available at all, and "case law supporting such an exception has been inconsistently applied."  Haag, 969 F. Supp. 2d at 317.  Regardless, the exception does not apply where, as here, plaintiffs allege that a vehicle component wears out too quickly.  See id. (dismissing implied warranty claim based on brake wear).  Ms. Papa's allegations regarding oil consumption simply bear no resemblance to the cases she cites, Pl. Br. at 24 (i.e., "increased propensity to rollover" and "defective braking system").

**F. Plaintiff Hegle fails to state a claim for breach of express or implied warranty.**

Although plaintiff Hegle alleges that her previous vehicle stalled suddenly, her warranty claims fail for a separate reason: she admits that Subaru repaired her vehicle.[13] To claim a breach of warranty, express or implied, a plaintiff must allege that the defendant refused to repair the vehicle. See, e.g., Marchante v. Sony Corp. of Am., 801 F.Supp. 2d 1013, 1020 (S.D. Cal. 2011) (dismissing warranty claims where plaintiffs failed to allege that defendant "refused to repair any covered defects").  Plaintiff Hegle makes no such

---

[13]   Although the issue is not ripe, Subaru disputes that Ms. Hegle's vehicle stalled due to its rate of oil consumption.

allegations.  Indeed, plaintiffs' opposition attempts to dodge
the issue, but in doing so, it admits that repairs were made.

        As to her first vehicle, Ms. Hegle argues that some
effort was required "before repairs were performed."  Pl. Br. at
26.  As to her second vehicle, she argues that it required "yet
another loop of repairs."  Id.  In other words, Subaru repaired
both vehicles.  If Ms. Hegle has issues with that repair work,
she could attempt an individual claim on that issue, but she
fails to allege a breach of warranty.

> **G.  Plaintiffs fail to state a claim for breach of the
>     implied covenant of good faith and fair dealing.[14]**

>     **1.  California**

        Plaintiffs admit that their good faith and fair
dealing claim is based on Subaru's "fail[ure] to inform
plaintiffs of the existence of the defect -- something not
explicitly required by the warranty."  Pl. Br. at 31.  But that
is precisely Subaru's argument.  Plaintiffs seek to impose a
substantive duty beyond the terms of the warranty, which is
exactly what California forbids.  See Guz v. Bechtel Nat'l Inc.,
24 Cal. 4th 317, 327 (2000) ("[W]here an implied covenant claim
alleges a breach of obligations beyond the agreement's actual

---

[14]   Although plaintiffs' allegations of bad faith and ill
motive are unfounded, they are sufficient to survive the
pleading stage under New Jersey and Connecticut law, only.

terms, it is invalid"); <u>Plastino v. Wells Fargo Bank</u>, 873 F. Supp. 2d 1179, 1191-92 (N.D. Cal. 2012) (same).

  2.  **New York**

        Dispensing with the need to cite legal authority, plaintiffs argue that Subaru "frustrated" the express warranty, apparently differentiating between "frustrating" a warranty and a "breaching" it.  Plaintiffs' attempt to split hairs makes sense, for a "breach of the implied duty of good faith is merely a breach of the underlying contract," <u>Patel v. New York Life Ins. Co.</u>, No. 11-4895, 2012 WL 1883529, at *3 (S.D.N.Y. May 21, 2012) (citation and editing marks omitted), and a good faith and fair dealing claim is "duplicative of a cause of action alleging breach of contract," <u>Cary Oil v. Mg Refining & Marketing, Inc.</u>, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000).  "Frustration" of the warranty is nothing more than a breach, and the <u>ipse dixit</u> of plaintiffs is insufficient to rule otherwise.  The good faith and fair dealing claim alleged under New York law should be dismissed as duplicative.

III.   CONCLUSION

For the above-stated reasons -- and those in Subaru's moving brief -- the following claims should be dismissed for failure to state a claim:

1.   All claims for injunctive relief in the form of a recall or a safety-related defect notice;

2.   All claims on behalf of the putative Emissions Warranty Class;

3.   Counts I, II, III, and IV, to the extent alleged under New Jersey law, as to plaintiffs Yaeger, Schuler, Montgomery, Bair, Hegle, Papa and Tedesco;

4.   Count II, alleging a breach of express warranty, as to plaintiff Hegle;

5.   Count III, alleging a breach of the implied warranty of merchantability, as to all plaintiffs;

6.   Count IV, alleging a violation of the implied covenant of good faith and fair dealing, as to all plaintiffs (whicvh plaintiffs have conceded as to Florida and Pennsylvania);

7.   Counts VIII and IX, alleging violations of New York General Business Law §§ 349 and 350, as to plaintiff Papa (which plaintiffs conceded);

8.   Count XIII, alleging a violation of California's Secret Warranty Law, as to plaintiffs Yaeger, Montgomery and Hegle; and

9.   Count XIV, alleging a violation of the Magnuson-Moss Warranty Act based on an alleged breach of the emissions warranty, as to all plaintiffs.

Respectfully submitted,


s/ *Michael R. Carroll*

Neal D. Walters
Michael R. Carroll
Michele C. Ventura
Casey G. Watkins
**BALLARD SPAHR LLP**
**A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP**
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002
Tel. (856) 761-3400
Fax  (856) 761-1020

*Counsel for defendant*
  *Subaru of America, Inc.*

**DATED:**    January 20, 2015