```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEITH YAEGER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SUBARU OF AMERICA, INC., *a New Jersey Corporation*, et al.,<br><br>　　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>No. 1:14-cv-4490 (JBS-KMW)<br><br>**MEMORANDUM OPINION RE: ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |

**SIMANDLE, Chief District Judge:**

　　Plaintiffs in this nationwide class action have filed the present motion for court approval of attorneys' fees, expenses, and incentive awards. [Docket Item 69]. The terms of the proposed Settlement Agreement were previously set forth in connection with the parties' motion for preliminary approval of class certification and for notice of the proposed settlement to the class [Docket Item 49]. After due notice by mail to the proposed class numbering more than 665,000 members in March and April 2016, the Court convened a final fairness hearing on July 26, 2016 to consider whether the proposed settlement was fair, adequate, and reasonable, pursuant to Rule 23(e), Fed. R. Civ. P., considering all objections and the arguments of all counsel. The Court, for reasons stated at the hearing and in the Opinion and Order of August 31, 2016 [Docket Items 107 & 108], approved the certification of the settlement class and the terms of the

proposed Settlement Agreement. The Court thus granted class certification of the Settlement Class defined as follows:

> All residents of the continental United States who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska. Excluded from the Settlement Class are Subaru, Subaru's employees, employees of Subaru's affiliated companies, Subaru's officers and directors, dealers that currently own Settlement Class Vehicles, all entities claiming to be subrogated to the rights of Settlement Class Members, issuers of extended vehicle warranties, and any Judge to whom the Litigation is assigned.

The class membership was reduced by 2,238 persons who timely opted out, identified in Exhibit A to the Order of today's date Granting Plaintiffs' Motion for Final Approval. [Docket Item 108].

Two provisions of the Settlement Agreement give rise to the present motion, namely Section XIII.51 (providing that Subaru agrees to pay, subject to Court approval, the amount of up to $1,500,000 to Plaintiffs' Counsel for their attorneys' fees and expenses), and Section VIII.52 (providing that Subaru agrees to pay incentive awards of $3,500 to each of the nine Class Representatives, totaling $31,500).

Plaintiffs have submitted their motion, memorandum of law, and supporting declarations of counsel[1] [Docket Items 69 and 69-1

---

[1] Declarations of counsel include Richard D. McCune [Docket Item 69-3]; Benjamin F. Johns and Exs. A & B thereto [Docket Item 69-4,5 & 6]; Eric H. Gibbs and Ex. A thereto [Docket Item 69-7 & 8]; Eric Lechtzin and Ex. A thereto [Docket Items 69-9 & 10]; and Matthew R. Mendelsohn [Docket Item 69-11].

2

through 69-11], together with the record at the fairness hearing (see Tr. 7/26/16 at 60:3 to 63:20).

Consistent with the Settlement Agreement, Defendant Subaru does not oppose this motion for payment of $1,500,000 in attorneys' fees and reimbursement of expenses, and for payment of the $3,500 incentive awards to the nine named Class Representatives. (Tr. 7/26/16 at 61:21-22). Likewise, no member of the Settlement Class has objected to this motion.[2]

The Court makes the following findings of fact and conclusions of law pursuant to Rules 23(h)(3) and 52(a), Fed. R. Civ. P:

1.  Plaintiffs' counsel submitted declarations of the time expended, the services rendered, and the current billing rates charged to clients, together with expenses incurred in pursuing this class action, all in compliance with Rule 54(d)(2), Fed. R. Civ. P.

2.  These submissions are summarized as follows:

    a.  The law firm of McCune Wright, LLP billed 528.20 hours at a total lodestar of $301,051.75. The firm's expenses are $3,077.00. See Exhibit 1 for the Declaration of Richard McCune, at ¶¶ 42, 44.

---

[2] In contrast, 28 opposition letters were received, opposing various aspects of the negotiated Settlement Agreement, which were considered in connection with the final fairness hearing and discussed in the Opinion approving the class settlement of today's date. It may be inferred, however, that objectors who are dissatisfied with some aspect of the Settlement Agreement would not favor an award of attorneys' fees or class representative incentive fees for achieving it.

   b. The law firm of Chimicles & Tikellis LLP billed 1,201.75 hours at a total lodestar of $538,403.75. The firm's total expenses are $13,682.70. See Exhibit 2 for the Declaration of Benjamin F. Johns, at ¶¶ 6, 9.

   c. The law firm of Girard Gibbs billed 838.00 hours at a total lodestar of $391,893.50. The firm's expenses are $16,016.10. See Exhibit 3 for the Declaration of Eric H. Gibbs, at ¶¶ 4, 22.

   d. The law firm of Berger & Montague, P.C. billed 229.3 hours at a total lodestar of $159,850.00. The firm's total expenses are $1,541.25. See Exhibit 4 for the Declaration of Eric Lechtzin, at ¶¶ 8-9.

   e. The law firm of Mazie Slater Katz & Freeman, LLC billed 58 hours at a total lodestar of $31,900.00. The firm's total expenses are $81.38. See Exhibit 5 for the Declaration of Matthew R. Mendelsohm, at ¶¶ 10, 13.

 3. The documentation adequately describes the services rendered, the hourly rates for each attorney and paralegal performing services, and the expenses incurred, all based upon contemporaneously maintained billing records. The combined lodestars for those firms is $1,423,099. They have collectively incurred $34,398.43 in unreimbursed expenses, and have billed over 2,855 contingency fee hours on this case. The total lodestar of fees plus unreimbursed expenses is $1,457,497.43. This does not include fees for services to be rendered to the

class in the future, such as monitoring and enforcement of the administration of Settlement Agreement. The Court finds that these services were reasonable and necessary to undertaking this class action and that the expenses were reasonably incurred.

    4. The Court has the duty, pursuant to Rule 23(h), to examine any request for fees and expenses in a certified class action and award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The procedures governing such determinations are specified in Rule 23(h)(1)-(3), and those have been followed here. The objective is to determine whether the fee award sought by class counsel is reasonable. In re Cendant Corp. Litig., 264 F.3d 201, 283 (3d Cir. 2001).

    5. This is not a case where class counsel's attorney's fees and expenses are to be paid from a common fund that diminishes the net recovery to the class. Nonetheless, in an abundance of caution, the Court will apply the non-exhaustive factors for such cases in the Third Circuit set forth in Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000). These Gunter factors include:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement.

In re AT&T Corp. Secs. Litig., 455 F.3d 160, 165 (3d Cir. 2006) (internal citations omitted).

  6. The size of the class benefits in this case and the number of persons benefitted justifies the award.  With 577,860 class vehicles and 665,730 owners and lessees, class counsel have served the interests of over a half million people nationwide.  The value of the benefits conferred cannot be precisely computed because of the open-ended nature of Subaru's obligations for repairs and restitution going forward.  Subaru's counsel has indicated that the cost to Subaru of the extended warranty provisions alone is estimated at $5 million, and that reimbursements for past covered expenditures will only push the total higher.  (Tr. 7/26/16 at 17:9 to 18:19).  The value of the extended warranty repairs to class members exceeds these figures, since retail repairs would cost the consumer more than the dealer's own costs.  The indicated attorney fee lodestar this would represent less than 23 percent[3] of the anticipated overall benefit of the extended warranty to the class not counting the benefit of the reimbursements that Subaru is also required to make in the claims process.  If one assumes claim payouts to class members of, for example, $2 million, the fee

---

[3] The recovery can be analogized to a common fund where the fund consists of $5 million in class benefits and $1.5 million in class attorney's fees, for a total recovery of $6.5 million.  Where the numerator is $1.5 million and the denominator is $6.5 million, the fee award would represent approximately 23% of the common fund, by analogy.

6

award sought herein would be less than 18 percent of a common fund, by analogy.[4]

7. The class acceptance of this proposed settlement was widespread, with only 28 objections filed before the July 6, 2016 deadline and an opt-out rate of 0.35% (as discussed in the separate Opinion approving class settlement (Docket Item 107)). The objections were considered and overruled in the Opinion approving the class settlement filed on today's date. (Id.) There are, moreover, no objections to the attorney's fee request, which is "strong evidence that the fees request is reasonable," Reinhart v. Lucent Techs., Inc., 327 F. Supp 2d 426, 435 (D.N.J. 2004); accord Weber v. GEICO, 262 F.R.D. 431, 451 (D.N.J. 2009).

8. Class counsel were efficient and skillful in achieving the class settlement expeditiously and professionally. The proposed settlement was negotiated within 16 months of the initiation of this suit. Class counsel's submissions to the Court during the litigation and settlement phases were well done and persuasive.

9. This class action presented complex legal, factual and logistical issues which were fairly resolved in counsel's negotiated class settlement.

---

[4] If the common fund consisted of $8.5 million (extended warranty of $5.0 million plus reimbursements of $2.0 million plus counsel fees of $1.5 million), a counsel fee of $1.5 million awarded from that fund would amount to 17.64 percent.

10. Class counsel undertook the case risking non-recovery and non-payment for thousands of hours of service.

11. As noted, class counsel devoted considerable time (2,855 hours) to prosecuting and negotiating this class action, and additional time remains to be expended to monitor and, if necessary, seek to enforce class rights under the settlement. The fee request is proportional to the time expended.

12. Class counsel have pointed to fee awards in similar cases (Pl. Mem. in Support of Motion for Attorneys' Fees at 28), although each case must turn on its own facts and little can be learned from a listing of seemingly comparable fee awards without a more detailed analysis of those cases based on whatever data might be available.  Since no party or class member has alleged that the present fee request lies outside the zone of awards in comparable cases, the Court will not further examine this factor.

13. The value this settlement has to the class is attributable to the class counsel and class representatives stepping forward to obtain this result.  The Court is unaware of efforts of other groups, such as government agencies conducting investigations into this oil consumption problem.

14. A contingent fee agreement on a case-by-case basis would likely have been for a significantly greater percentage fee than the overall award sought herein, and typically the

consumer would be liable for out-of-pocket expenses in such a contingent fee agreement, win or lose.

15.   Whether class counsel achieved "innovative" terms of settlement may be judged by recognition of several unusual features, namely:  (1) the risks of the class vehicles' covered repair costs, like the costs of reimbursements, are borne by Subaru, not by a fixed fund; and (2) the costs of claims administration, class counsel fees, incentive awards, and expenses are borne by Subaru and not by the class.  These are among the unusually favorable aspects of the results obtained by class counsel.

16.   The lodestar method also provides a useful cross-check of the above analysis, see In re Insurance Brokerage Antitrust Litig., 579 F.3d 241, 280 (3d Cir. 2009).  Based on the lodestar summary in ¶3, above, the total for attorneys' fees and expenses of $1,457,497.43 is nearly identical to the requested total of $1,500,000.00.  The requested award represents a multiplier of 102.9% of the lodestar, which is quite reasonable for the results obtained.

17.   Under both methods -- whether by consideration of the Gunter/AT&T factors or consideration of the lodestar method[5] -- the Court finds the requested award of fees and expenses of $1.5

---

[5] For discussion of cases using a comparison of percentage awards and lodestar methods to ascertain reasonableness of class counsel's fee request, see 7B Wright, Miller & Kane, Federal Practice and Procedure, § 1803.1 n. 41 (2005 ed. & 2012 Supp.)

million to be reasonable, appropriate and fair, and it will be approved.

18.  Finally, the Court approves incentive award payments of $3,500 to each of the nine Class Representatives, to be paid by Subaru in the total amount of $31,500.  The Court finds that these individually-named plaintiffs were a catalyst to achieving the class settlement for the benefit of the class; without their initiative and willingness to find attorneys and authorize filing of lawsuits seeking redress, which were combined into this consolidated nationwide case, this result would not have been obtained.  The Court accepts the representations of class counsel that the Class Representatives "participated in conferences and meetings with their attorneys, searched for and produced documents relevant to their claims in the litigation, and stayed abreast of significant developments in the case." (Pl. Mem. in Support of Motion for Attorneys' Fees at 32.) [Docket Item 69-2].  The amount of each award -- $3,500 -- is not elaborate or out of line but is consistent with the scale of relief likely to be obtained by a class member whose vehicle requires the engine replacement due to excess oil consumption, which is valued at approximately $4,000, not counting any reimbursements for previous engine oil and eligible repairs. Subaru's payment of these incentive awards is approved.

19.  Further, it is noted that class counsel's duties are not at an end.  Under the Settlement Agreement, and as discussed

10

in the Opinion of today's date approving the proposed class settlement (Docket Item 107 at Part III.D), class counsel will receive information about the administration of the class settlement, monitor the class settlement, seek additional information and take action if necessary and appropriate to enforce the class settlement for the benefit of the class at large.  Class counsel retain classwide duties to assure the protection of class rights.[6]  These duties may involve additional services, time, and incidental expense which is already embedded in the present fee award.

## CONCLUSION

For the above reasons, the Court grants Plaintiffs' motion for an award of attorneys' fees, expenses, and incentive awards. The accompanying Order will be entered.


 **August 31, 2016**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

---

[6] According to the Settlement Agreement, however, the duties of class counsel do not extend to representing individuals in the Better Business Bureau Appeals process, stating:  "Class Counsel will have no obligation to represent a Settlement Class Member in connection with a BBB appeal." Settlement Agreement, Section VI.C.3 [Docket Item 49-2].

11